**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| The United States of America, the | ) | |
| States of North Carolina, California, | ) | |
| Colorado, Delaware, Florida, Georgia, | ) | |
| Illinois, Indiana, Iowa, Louisiana, | ) | |
| Michigan, Minnesota, New Jersey, New | ) | |
| York, Tennessee, Texas, Virginia and | ) | |
| Wisconsin, *ex rel*. Scarlett Lutz, Kayla | ) | |
| Webster, Dr. Michael Mayes and Chris | ) | |
| Reidel, | ) | |
| Plaintiffs, | ) | CIVIL No. 14-cv-00230-RMG |
| vs. | ) | (Consolidated with 9:11-cv-1593-RMG |
| | ) | and 9:15-cv-2485-RMG) |
| Berkeley Heartlab, Inc., BlueWave | ) | |
| Healthcare Consultants, Inc., Latonya | ) | |
| Mallory, Floyd Calhoun Dent, III and | ) | |
| Robert Bradford Johnson, | ) | |
| Defendants. | ) | |

---

**DEFENDANT LATONYA MALLORY'S OBJECTIONS TO THE UNITED STATES'**
**PROPOSED JURY INSTRUCTIONS AND JOINING BLUEWAVE'S PROPOSED JURY**
**INSTRUCTIONS AND OBJECTIONS**

On August 29, 2017, Mallory joined the BlueWave defendants' (collectively "BlueWave") proposed jury instructions filed on the same date. (ECF Nos. 637, 644).[1] Mallory hereby joins BlueWave's proposed jury instructions filed on October 25, 2017 (ECF No. 703) and incorporates them herein, except the elements as stated in BlueWave's proposed jury instruction number 22 (advice of counsel affirmative defense) (ECF No. 703, p. 22). Mallory also proposes her instruction filed on August 29, 2017. (ECF No. 637). Mallory further joins all of BlueWave's objections to the government's proposed jury instructions, including the objections to the Court's Proposed Opening Charges and Related Requests for Instructions, and incorporates them fully

---

[1] Mallory did not join BlueWave's proposed jury instruction Number 33 and proposed an additional jury instruction. (ECF No. 637). Mallory now joins BlueWave's proposed jury instruction No. 33.

herein.  (*See* ECF No. 800).  Mallory objects to the United States' proposed jury instructions as a whole.  (ECF No. 755).   Mallory further objects to the United States' Proposed Jury Instructions (ECF No. 755) and objects to the United States' Proposal Regarding the Court's Opening Charge as follows:

### 1.1     Summary of Allegations [United States]

Mallory objects to proposed jury instruction 1.1 because it is argumentative and misleading.  It fails to explain that the defendants deny all liability and assert that they relied on the advice of counsel.

### 2.1     False Claims Act Liability [United States]

Mallory objects to instructing the jury on the False Claims Act before instructing it on the Anti-Kickback Statute.  To clearly state the law, the jury should determine whether the defendants violated the Anti-Kickback Statute prior to moving to the issue of whether or not they violated the False Claims Act. *See*, *e.g.*, instructions in United States v. Tuomey (ECF No. 631-4, p. 7); BlueWave's Proposed Jury Instructions and citations therein (ECF No. 703, p. 2).

Mallory objects to proposed jury instruction 2.1 as argumentative because it does not completely or accurately state the elements the government must prove.  *See* BlueWave's Proposed Jury Instruction Nos. 14, 15, 16 and citations therein.  (ECF No. 703, pp. 14-16); *see also* Vanskike v. ACF Industries, Inc., 665 F.2d 188, 201 (8th Cir. 1981) ("[a]n instruction is argumentative if it does not include all the elements of the doctrine") (citing Hortman v. Henderson, 434 F.2d 77, 79 (7th Cir. 1970)).  Further, it does not clarify the issue and inform the jury what factors are probative on that issue.  *See* Vanskike, 665 F.2d at 201 ("[a]n instruction should clarify the issue and inform the jury what factors are probative on that issue") (citing Richardson v. Walsh Construction Co., 334 F.2d 334, 338 (3rd Cir. 1964)).

Mallory further objects to the first paragraph of proposed instruction 2.1, *to wit*, "[t]he False Claims Act is a federal law designed to discourage fraud against the federal government. The False Claims Act authorizes the United States Government to recover damages caused by false or fraudulent claims for money or property of the United States." These assertions are argumentative, misleading, and duplicative. The Court will instruct the jury on the summary of the plaintiff's claims and the applicable law. (*See* Court's Opening Charge, pp. 7-8); *see also* Vanskike, 665 F.2d at 201-02 ("Instructions must be objective, not phrased in an argumentative vein favorable to either party. A court should go as far as possible to avoid giving undue prominence to a particular theory . . . An instruction is argumentative if it . . . singles out the testimony of one witness while disregarding other relevant evidence . . . or unduly highlights certain features of a case. . . . Singling out evidentiary features and emphasizing them by special instruction often tends to mislead a jury") (citations omitted). The purpose of the False Claims Act is immaterial to the jury's fact finding process.

### 2.2     Burden of Proof [United States]

Mallory objects to proposed jury instruction 2.2 (burden of proof). It is argumentative and does not accurately state the law. *See* BlueWave's Proposed Jury Instruction Nos. 10, 11, 45 and citations therein. (ECF No. 703, pp. 10, 11, 45).

### 2.2 [sic]     Claimed Defined [United States]

Mallory objects to proposed jury instruction 2.2 (claim defined) as argumentative because it does not completely or accurately define "claim." *See* Vanskike, 665 F.2d at 201 ("[a]n instruction is argumentative if it does not include all the elements of the doctrine") (citing Hortman, 434 F.2d at 79). The term "claim" is clearly defined by the False Claims Act. 31 U.S.C. § 3729(b)(2) (defining "claim"); *see also* BlueWave's Proposed Jury Instruction No. 18 (defining

"claim" as defined by the False Claims Act). Moreover, the government's proposed instruction improperly takes factual issues away from the jury by instructing "[i]n this case, the claims are the requests for reimbursement submitted by HDL and Singulex to Medicare and TRICARE for laboratory testing services." Whether the government proves that claims exist (and whether they were submitted by HDL and Singulex to Medicare and TRICARE) is a factual issue for the jury to decide. Moreover, it is argumentative and misleading in that it singles out testimony and unduly highlights certain features of the government's case. *See* Vanskike, 665 F.2d at 201-02.

### 2.3     False or Fraudulent Claim [United States]

Mallory objects to proposed jury instruction 2.3 as argumentative, incorrectly states the law, and improperly takes factual issues away from the jury. *See* Vanskike, 665 F.2d at 201. Prior to January 1, 2011, a claim that included items or services resulting from a violation of the Anti-Kickback Statute was not necessarily nor statutorily false. *See* 42 U.S.C. § 1320a-7b(g), *as amended by* the Patient Protection and Affordable Care Act, Pub. L. no. 111-148, 124 Stat. 119 (2010), effective January 1, 2011; *see also* BlueWave's Proposed Jury Instruction Nos. 12, 25 and citations therein (ECF No. 703, pp. 12, 25). Moreover, a claim that includes an item or service that is medically unnecessary is not necessarily nor statutorily false. This is a factual issue for the jury to decide.

### 2.4     Causation [United States]

Mallory objects to proposed jury instruction 2.4. It is argumentative and incorrectly states the law. *See* Vanskike, 665 F.2d at 201; *see also* BlueWave's Proposed Jury Instruction Nos. 38, 40 and citations therein (ECF No. 703, pp. 38, 40).

Moreover, the proposed instruction "[y]ou may find that causation was established even if you find that HDL and Singulex, the laboratories who submitted the claims to the United States,

4

did not know that the claims, records, or statements were false" is argumentative, irrelevant, misleading, and confusing. Mallory had no involvement with Singulex whatsoever, and this charge could allow the jury to impose liability on Mallory for actions committed only by Singulex. These two entities cannot be combined so nonchalantly. *See* Vanskike, 665 F.2d at 201-02. Whether HDL and Singulex knew that the "claims, records, or statements were false" is not an issue in this case. Moreover, Mallory was the CEO of HDL. If the jury finds that HDL did not know that the "claims, records, or statements were false," it unclear how Mallory could have known that the "claims, records, or statements were false." Further, whether "the laboratories" "submitted [] claims to the United States" is a factual issue for the jury to decide.

Moreover, Mallory objects to the phrase "causing the payment of Government money to some individual or entity will suffice [as causation]." (ECF No. 755, p. 7). The government defines "causation" as requiring that the conduct be "a substantial factor in producing the harm and that the outcome was foreseeable." Even under this definition, proof that Mallory "caus[ed] the payment of government money to some individual or entity" will not "suffice" as causation.

**2.5    Knowledge [United States],**
**2.6    Actual Knowledge [United States],**
**2.7    Deliberate Ignorance [United States],**
**2.8    Reckless Disregard [United States], and**
**United States' Proposal Regarding the Court's Opening Charge**

Mallory objects to the government's proposed jury instructions 2.5, 2.6, 2.7, and 2.8, and United States' Proposal Regarding the Court's Opening Charge because they are argumentative and do not accurately state the law. The government incorrectly conflates the actus reus (falsity) and the mens rea (knowledge) elements of the False Claims Act. The False Claims Act requires that Mallory "knew" that she violated the Anti-Kickback Statute.

To establish a violation of the False Claims Act under sub-section (a)(1)(A), the plaintiffs must prove that: (1) that there was "a false or fraudulent claim for payment or approval" (the actus reus, or falsity) (2) which Mallory "knowingly present[ed], or cause[d] to be presented" (the mens rea, or knowledge) (3) that was material to the government's decision to pay a claim (materiality); and (4) that caused the government to pay out money or to forfeit moneys due (causation). 31 U.S.C. § 3729(a)(1)(A); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008); Universal Health Services, Inc. v. United States ex rel. Escobar, -- U.S. --, 136 S.Ct. 1989, 1996, 195 L.Ed.2d 348 (2016); United States ex rel. Petratos v. Genentech, Inc., 855 F.3d 481, 487 (3rd Cir. 2017) ("A False Claims Act violation includes four elements: falsity, causation, knowledge, and materiality").

Similarly, to establish a violation of the False Claims Act under sub-section (a)(1)(B), the plaintiffs must prove that: (1) there was "a false record or statement" (the actus reus, or falsity) (2) which Mallory "knowingly ma[de], use[d], or cause[d] to be made or used" (the mens rea, or knowledge), (3) that was material to the government's decision to pay a claim (materiality); and (4) that caused the government to pay out money or to forfeit moneys due (causation). 31 U.S.C. § 3729(a)(1)(B); Wilson, 525 F.3d at 376; Escobar, 136 S.Ct. at 1996; Petratos, 855 F.3d at 487.

The Anti-Kickback Statute does not require the plaintiffs to prove that Mallory had the specific intent to violate the Anti-Kickback Statute. 42 U.S.C. § 1320a-7b. Conversely, the False Claims Act requires the plaintiffs to prove that Mallory "knowingly" violated the Anti-Kickback Statute.[2] This distinction is explained as follows:

> Given the structure of the FCA claims, it is important to understand and distinguish the first two elements of FCA liability: falsity and scienter. Falsity requires that some law has been violated. Scienter is a separate but related requirement: It

---

[2] The False Claims Act defines "knowingly" as actual knowledge, deliberate ignorance of the truth or falsity, or reckless disregard of the truth or falsity. 31 U.S.C. § 3729(b)(1)(A).

> requires determining whether the defendant *knew* that some law was being violated. In other words, scienter is a question of whether the defendant knew there was a falsity. These two elements may be difficult to distinguish because sometimes the defendant may avoid FCA liability because its misrepresentation of the law was reasonable (scienter), even though the court determines that a violation of the law nevertheless occurred (falsity). To put it differently, a defendant may avoid liability on scienter grounds, due to the reasonableness of its position, even though the court finds the defendant's position ultimately incorrect.

James Wiseman, *Reasonable, but Wrong: Reckless Disregard and Deliberate Ignorance in the False Claims Act After Hixon*, 117 Colum. L. Rev. 435, 444 (2017) (citations omitted) (available at http://columbialawreview.org/content/reasonable-but-wrong-reckless-disregard-and-deliberate -ignorance-in-the-false-claims-act-after-hixson/).

The distinction between the actus res and mens rea under the False Claims Act is also apparent throughout case law. The mens rea under the False Claims Act "is not intent to deceive." Hindo v. University of Health Sciences/The Chicago Medical School, 65 F.3d 608, 613 (7th Cir. 1995). Rather, the mens rea "is the knowing presentation of what is known to be false." Id. (citations omitted). In other words, the plaintiff must prove that Mallory "knowingly presented" (the mens rea) a claim that violated the Anti-Kickback Statute (the actus reus, what is known to be false).

This is why the "government knowledge inference" is relevant to Mallory's scienter under the False Claims Act: "The 'government knowledge inference' helps distinguish, in FCA cases, between the submission of a false claim and the *knowing* submission of a false claim – that is, between the presence and absence of scienter." United States ex rel. Burlbaw v. Orenduff, 548 F.3d 931, 951 (10th Cir. 2008) (citations omitted); *see also* June 19, 2017 Order, pp. 9-10 (ECF No. 494) ("Federal courts look to a variety of factors to determine whether a defendant acted with reckless disregard, including '(1) the defendant's adherence to custom or industry practice; (2) the defendant's existing knowledge or expertise; (3) any legal advice the defendant received; (4) any

7

professional or expert advice the defendant received; (5) the defendant's disclosure of its conduct to the government; (6) the existence of any guidance or authority from an administrative agency or court; (7) the reasonableness of the defendant's actions, positions, or interpretations; and (8) the defendant's motive'") (quoting James Wiseman, *Reasonable, but Wrong: Reckless Disregard and Deliberate Ignorance in the False Claims Act After Hixon*, 117 Colum. L. Rev. at 450-51)).  To prove a violation of the False Claims Act, the government must prove that Mallory "knowingly" violated the Anti-Kickback Statute.

Mallory also objects to these instructions as argumentative because they are incomplete. In addition to the BlueWave instruction, the jury should be instructed as follows:

You may not find that the defendant had knowledge from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.  *See* United States v. Tuomey Jury Instructions (ECF No. 631-4, p. 12); *see also* United States v. Ogba, 526 F.3d 214, 230 (5th Cir. 2008).

Mallory's additional objections to the government's proposed jury instructions 2.6, 2.7, and 2.8 are stated below.

### 2.6    Actual Knowledge [United States]

Mallory objects to the second paragraph of proposed jury instruction 2.6, *to wit*, "[t]he United States may establish that a defendant had actual knowledge through circumstantial evidence.  For example, if it appears that a certain condition existed for a substantial period of time, and that defendant had regular opportunities to observe the condition, then you may draw the inference that the defendant had knowledge of the condition."  This instruction is duplicative because the Court will give its instruction on circumstantial evidence.  (*See* Court's Opening Charge, pp. 3-4).  Further, it is argumentative and misleading.  It gives prominence to the

government's theory and singles out the testimony that will be elicited by the government. *See* Vanskike, 665 F.2d at 201-02 ("Instructions must be objective, not phrased in an argumentative vein favorable to either party. A court should go as far as possible to avoid giving undue prominence to a particular theory . . . An instruction is argumentative if it . . . singles out the testimony of one witness while disregarding other relevant evidence . . . or unduly highlights certain features of a case. . . . Singling out evidentiary features and emphasizing them by special instruction often tends to mislead a jury") (citations omitted).

### 2.7     Deliberate Ignorance [United States]

Mallory objects to proposed jury instruction 2.7. It incorrectly states the law, is argumentative, and is misleading. "Deliberate ignorance" means that the person deliberately chose to remain ignorant of the truth or falsity of the information. *See* 31 U.S.C. § 3729(b)(1) (defining "knowing" to include "that a person, with respect to information . . . acts in deliberate ignorance of the truth or falsity of the information").

In its definition, the government wrongfully uses the term "confirm," stating that deliberate ignorance is when a person "suspected a fact but refused to confirm it." (ECF No. 755, p. 10). The word "confirm" means to establish the truth or correctness. In the government's view, if Mallory "suspected" that HDL's payment of P&H fees violated the Anti-Kickback Statute she would be deliberately ignorant if she refused to establish the correctness of this alleged fact. This is not the law. Rather, deliberate ignorance is to remain deliberately ignorant of the truth or falsity of the information.

Similarly, "[a] finding that a defendant purposely avoided learning all the facts" is not "deliberate ignorance." (*See* ECF No. 755, p. 10). For example, perhaps the jury finds that the government proved that Mallory purposely avoided learning a single fact. Thus, she did not learn

"all the facts."  Even if the fact was insignificant, and even if the fact supported the position that P&H fees do not violated the Anti-Kickback Statute, Mallory would be "deliberately ignorant" under the government's proposed instruction.  Deliberate ignorance is not purposely avoiding learning a fact.  It is to deliberately remain ignorant of the truth or falsity of the information, i.e. to deliberately remain ignorant of the truth or falsity of whether HDL's payment of P&H fees violated the False Claims Act.

The government wrongly uses the term "fact" throughout the proposed jury instruction, e.g. stating that "a defendant's knowledge of a *fact* may be inferred from willful blindness to the existence of the *fact*."  (ECF No. 755, p. 10) (italics added).  However, it is not knowledge of a fact or willful blindness to the existence of a fact that constitutes deliberate ignorance.  Rather, it is to deliberately remain ignorant of the truth or falsity of the *information*, i.e. whether HDL's payment of P&H fees violated the False Claims Act.

Further, by using the phrase "also constitutes deliberate ignorance, the government wrongly conveys that a defendant "deliberately clos[ing] its eyes" to "clear warning signs" or "what would have been obvious" necessarily constitutes deliberate ignorance.  (ECF No. 755, p. 10) (stating "The United States can prove 'deliberate ignorance' through proof that a defendant deliberately closed its eyes to clear warning signs or to what otherwise would have been obvious to it.  A finding that a defendant purposely avoided learning all the facts, or suspected a fact but refused to confirm it, **also constitutes deliberate ignorance**") (bold added).  This is not the law. At most, "warnings" are evidence that a jury may consider when deciding if the defendant was deliberately ignorant.  *See* <u>Tuomey</u>, 792 F.3d at 380-81 ("[a] reasonable jury could indeed be troubled by Tuomey's seeming inaction in the face of McAnaney's warnings, particularly given Tuomey's aggressive efforts to avoid hearing precisely what McAnaney had to say regarding the

contracts"). Finding that the defendant was given "warnings" does not necessitate a finding of deliberate ignorance.

### 2.8    Reckless Disregard [United States]

Mallory objects to proposed jury instruction 2.8. It incorrectly states the law, is argumentative, is incomplete, and is misleading.

"Reckless disregard" is not "reckless disregard of a *claim's* truth or falsity" as asserted by the government. (ECF No. 755, p. 11) (italics added). It is "in reckless disregard of the truth or falsity of the *informatio*n." 31 U.S.C. § 3729(b)(1)(A)(iii) (italics added).

The government also wrongfully interjects the adjectives "innocent" and "mere" in its proposed instruction. (ECF No. 755, p. 11) (stating "[a]n *innocent* mistake or *mere* negligence is not sufficient to constitute knowledge under the False Claims Act") (italics added). This is not the law. If the jury finds that the government proved that Mallory made a mistake, she is not liable. The jury is not required to find that she made an "innocent" mistake. Similarly, if the jury finds that the government proved that Mallory was negligent, she is not liable. The jury is not required to find that she was "merely" negligent. If there is no difference between a mistake and an "innocent" mistake (or negligent and "merely" negligent), Mallory objects because the words "innocent" and "merely" are misleading and redundant. As stated above, the jury should be instructed the following:

You may not find that the defendant had knowledge from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition. *See* United States v. Tuomey Jury Instructions (ECF No. 631-4, p. 12); *see also* United States v. Ogba, 526 F.3d 214, 230 (5th Cir. 2008).

11

Moreover, in the second paragraph, the government uses the conjunction "but" and, in so doing, wrongfully conveys the law.  The government first states that "[a]n innocent mistake or mere negligence is not sufficient to constitute knowledge under the False Claims Act."  (ECF No. 755, p. 11).  In other words, if the jury finds that Mallory made an "innocent" mistake or was "merely" negligent, then it must find that she did not have knowledge under the False Claims Act. Immediately after this sentence, the government says "**But** if a defendant failed to make such inquiry as would be reasonable and prudent, that is evidence of 'reckless disregard.'"  (ECF No. 755, p. 11) (bold added).  However, this second sentence is not a coordinate element of the first sentence.  In other words, the government is inappropriately using the word "but" to mean "on the contrary" or "conversely."  It would be similar to saying: "An innocent mistake or mere negligence is not sufficient to constitute knowledge under the False Claims Act.  [On the contrary,] if a defendant failed to make such inquiry as would be reasonable and prudent, that is evidence of 'reckless disregard.'"  This is not the law.

At most, whether Mallory "failed to make such inquiry as would be reasonable and prudent" is only one factor for the jury to consider.  This is argumentative because, by singling out one factor, it unduly highlights certain features of the case and gives prominence to the government's theory.  *See* Vanskike, 665 F.2d at 201-02.  It is also misleading.  Id.  The jury should be instructed on all the factors as follows:

You can consider a variety of factors to determine whether a defendant acted with reckless disregard, including "(1) the defendant's adherence to custom or industry practice; (2) the defendant's existing knowledge or expertise; (3) any legal advice the defendant received; (4) any professional or expert advice the defendant received; (5) the defendant's disclosure of its conduct to the government; (6) the existence of any guidance or authority from an administrative agency

or court; (7) the reasonableness of the defendant's actions, positions, or interpretations; and (8) the defendant's motive."[3]

### 2.9    Materiality [United States]

Mallory objects to proposed jury instruction 2.9 as argumentative.  It inaccurately states the law and is incomplete.  *See* <u>Vanskike</u>, 665 F.2d at 201-02.  The government wrongfully asserts two bright-line rules: (1) "whether laboratory services resulted from violations of the Anti-Kickback Statute is material" and (2) "whether laboratory services were medically unnecessary is material."  This is not the law.   Further, the proposed jury instruction does not completely define material, is misleading, unduly highlights certain features of the case, and wrongfully gives prominence to the government's theory of the case.  *See* <u>Escobar</u>, 136 S.Ct. at 2003-04; <u>City of Chicago v. Purdue Pharma, LP</u>, 211 F.Supp.3d 1058 (N.D. Ill. 2016); <u>Vanskike</u>, 665 F.2d at 201-02.  Mallory acknowledges that the Court accepted the government's proposed instruction 2.9 and has rejected defendants' proposed instruction 19.

### 2.10    Elements of Conspiracy [United States] and
### 2.11    Definition of Conspiracy [United States]

Mallory objects to the government's proposed jury instructions 2.10 and 2.11 as argumentative and misleading.  The third paragraph of proposed jury instruction 2.11 states that "[t]he existence of a conspiracy may be established by circumstantial evidence.  You may conclude that a defendant joined a conspiracy even in the absence of evidence directly showing an express or formal agreement.  Rather, you may infer that an agreement existed between two defendants, or between a defendant and other conspirators, from any collection of circumstances tending to show

---

[3](Order, ECF No. 494 at 10) (quoting James Wiseman, *Reasonable, but Wrong: Reckless Disregard and Deliberate Ignorance in the False Claims Act After Hixon*, 117 Colum. L. Rev. 435, 450-51 (2017)).

a mutual understanding, spoken or otherwise, that the members would cause to have a fraudulent claim paid by the United States." This instruction is duplicative because the Court will give its instruction on circumstantial evidence. (*See* Court's Opening Charge, pp. 3-4). It is also argumentative and misleading because it gives prominence to the government's theory and unduly highlights certain aspects of the case. *See* <u>Vanskike</u>, 665 F.2d at 201-02.

The proposed jury instruction is also argumentative in that it is incomplete. The jury should be instructed as stated in BlueWave's proposed jury instructions and, in addition, as follows:

The government must prove that the alleged conspirators shared a specific intent to defraud the government.[4]

### 2.14    Co-Conspirators' Acts and Statements [United States]

Mallory objects to the government's proposed jury instruction 2.14. The first paragraph states "[t]he Court has admitted into evidence against defendants the acts and statements of others, because these acts and statements were committed by persons alleged to be confederates or co-conspirators of the defendants." It is irrelevant to the jury why the Court admitted certain evidence. Moreover, the government's proposed instruction is argumentative and misleading. Not all acts and statements of others admitted into evidence will be statements of persons alleged to be confederates or co-conspirators of the defendants. For example, the Court has ruled that the

---

[4] <u>United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System</u>, 274 F.Supp.2d 824, 857 (S.D. Tex. 2003) ("the essence of a conspiracy under the FCA is an agreement between two or more persons to commit fraud. … Courts agree that, to establish the existence of a civil conspiracy, a plaintiff must present evidence to show a meeting of the minds of two or more persons on the object or course of action. … In the context of an FCA conspiracy, the evidence must show that the alleged conspirators shared a specific intent to defraud the government"); *see also* <u>United States v. Toyobo Co. Ltd.</u>, 811 F. Supp. 2d 37, 50 (D.D.C. 2011) ("To state a claim under the FCA for conspiracy, a plaintiff must plead that the alleged conspirators agreed to make use of a false record or statement to achieve the end of getting the government to pay a claim"); BlueWave Proposed Jury Instruction No. 16 (ECF No. 703, p. 16).

defendants may introduce statements made by third-parties that would otherwise be inadmissible hearsay to show the effect these statements had on their state of mind.  (Order, ECF No. 736, pp. 10-12).

    **2.16    Invocation of Fifth Amendment [United States]**

Mallory objects to proposed jury instruction 2.16 as argumentative.  This is not the law with respect to Mallory.  *See* <u>Vanskike</u>, 665 F.2d at 201.  The jury cannot draw an adverse inference against Mallory due to a witness invoking his or her Fifth Amendment Privilege.  There is no close business or personal relationship between Mallory and the BlueWave sales force witnesses asserting the Fifth Amendment here.  (Order, ECF No. 736, pp. 17-18 "Courts are most likely to allow the jury to draw an adverse inference when there is a close business or personal relationship 'between the person who exercised the Fifth Amendment right and the individual against whom an adverse inference is drawn'") (quoting <u>Auto-Owners Ins. v. Newsome</u>, Civ. A. No. 4:12-cv-00447-RBH, 2013 WL 5797729, *4 n. 5 (D.S.C. Oct. 25, 2013)).

    **3.1    Solicitation or Receipt [United States] and**
    **3.2    Offer or Payment [United States]**

Mallory objects to proposed jury instructions 3.1 and 3.2 as argumentative.  They do not completely and accurately state the law.  42 U.S.C. § 1320a-7b(b); *see also* BlueWave's Proposed Jury Instruction Nos. 5-6 and citations therein (ECF No. 703 pp. 5-6); *see also* <u>Vanskike</u>, 665 F.2d at 201.  Further, they do not accurately state the burden of proof.  *See* BlueWave's Proposed Jury Instruction No. 11 and citations therein.  (ECF No. 703, p. 11); s*ee also* <u>Vanskike</u>, 665 F.2d at 201.  Mallory also objects insofar as the government requests that the Anti-Kickback Statute instructions be given after the False Claims Act instructions.  *See* discussion at 2.1, *supra*.

### 3.3    Purpose [United States] and
### 3.4    Remuneration [United States]

Mallory objects to proposed jury instructions 3.3 and 3.4.  They are argumentative.  They do not completely and accurately state the law.  Further, the proposed instructions give undue prominence to the government's theory and unduly highlights certain features of the case.

The Fourth Circuit has not adopted the "one purpose" test proposed by the government. *See* BlueWave's Proposed Jury Instruction No. 8 and citations therein.  (ECF No. 703, p. 8).  Even if the Fourth Circuit were to adopt the "one purpose" test, the "one purpose" must be a *criminal purpose*.  The government must prove that Mallory offered or gave remuneration, in whole or in part, for an unlawful, criminal purpose - - to induce referrals. "There is no AKS violation [] where the defendant merely hopes or expects referrals from benefits that were designed wholly for other purposes."  United States ex rel. Ruscher v. Omnicare, Inc., 663 Fed. Appx. 368, 374 (5th Cir. 2016); *see also* United States ex rel. McDonough v. Symphony Diagnostic Services, Inc., 36 F.Supp.3d 773, 777 (S.D. Ohio 2014) ("[t]he law does not criminalize *referrals*; rather, it criminalizes knowing and willful acceptance of remuneration in return for such referrals") (citation omitted); Klaczak v. Consolidated Medical Transport, 458 F. Supp. 2d 622, 686 (N.D. Ill. 2006) ("The various Medicare 'safe harbors' define a subset of clearly legal conduct, but that does not mean that anything outside the 'safe harbors' violates the AKS"); *see also* Vanskike, 665 F.2d at 201 ("[a]n instruction is argumentative if it does not include all the elements of the doctrine") (citing Hortman, 434 F.2d at 79).

The proposed instruction that "remuneration includes not only sums for which no actual service was performed but also those amounts for which some professional time was expended" gives prominence to the government's theory of the case, incorrectly states the law, and is misleading.  (*See* ECF No. 755, p. 24).  "The AKS does not criminalize referrals for services paid

16

for by Medicare or Medicaid—it criminalizes knowing and willful acceptance of remuneration in return for such referrals." Klaczak v. Consol. Med. Transp., 458 F. Supp. 2d 622, 678 (N.D. Ill. 2006). Remuneration is defined as "anything of value." Id. "In the context of the Anti–Kickback Statute, courts use 'fair market value' as the gauge of value when assessing the remuneration element of the offense." Id. at 678-79; *see also* BlueWave's Proposed Jury Instruction Nos. 7-9 and cases cited therein.

### 3.5    Knowingly [United States] and
### 3.6    Willfully [United States]

Mallory objects to the government's proposed jury instructions 3.5 and 3.6 as argumentative, misleading, and not accurately stating the law. The government proposes that the Court instruct the jury that "[a] defendant need not be aware of the specific law or rule that his or her conduct may be violating." (ECF No. 755, p. 26). However, to prove a violation of the False Claims Act, the government must prove that Mallory "knowingly" violated the Anti-Kickback Statute. *See* discussion of 2.5, 2.6, 2.7, 2.8, and United States' Proposal Regarding the Court's Opening Charge *supra*.

Moreover, the Anti-Kickback Statute requires that the government prove that Mallory acted with criminal intent. U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am., 748 F. Supp. 2d 95, 113 (W.D. Tex. 2010), aff'd sub nom. Gonzalez v. Fresenius Med. Care N. Am., 689 F.3d 470 (5th Cir. 2012) ("Thus, the Anti–Kickback Act requires proof that a defendant acted knowingly and willfully—criminal intent—in paying remuneration to induce referrals (or receiving remuneration as an inducement to refer)") (citing United States v. Davis, 132 F.3d 1092 (5th Cir. 1998)); U.S. ex rel. Jamison v. McKesson Corp., 900 F. Supp. 2d 683, 698, n.7 (N.D. Miss. 2012) ("[t]he Court analyzed the Government's AKS claims under the 'preponderance of the evidence' standard common in civil actions as opposed to the criminal 'beyond a reasonable doubt' standard.

Because the Government has failed to meet the lower civil standard, it is inconsequential which is the proper standard to consider for civil liability to attach under the Anti-Kickback Statute. However, the Court acknowledges that if this case were a closer call, the proper course would likely be to use criminal intent to prove a civil AKS violations") (citing Gonzalez v. Fresenius Medical Care North America, 689 F.3d 470 (5th Cir. 2012) (affirming district court's grant of judgment as a matter of law on the Anti-Kickback Statute violation for failure to show "criminal intent to induce referrals")).

**4.1    Reasonable and Necessary [United States]**

Mallory objects to the government's proposed jury instruction 4.1. The government's proposed jury instruction is argumentative, misleading, and incomplete. It does not instruct the jury that expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false. *See* United States v. AseraCare Inc., 153 F.Supp.3d 1372, 1383 (N.D. Ala. 2015), appeal filed (stating "[a]nd even more important to this case is the law mandating that "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ *cannot be false*") (citing United States ex rel Phalp v. Lincare Holdings, Inc., 116 F.Supp.3d at 1360, 1360, 2015 WL 4528955, at *25 (S.D. Fla. 2015); United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004) ("[E]xpressions of opinion or scientific judgments about which reasonable minds may differ cannot be 'false'."); United States v. Prabhu, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006) ("[C]laims are not 'false' under the FCA when reasonable persons can disagree regarding whether the service was properly billed to the Government")). Further, it fails to instruct the jury that it is the government's burden to prove that a test was not medically necessary.

### 5.1    Good Faith Reliance on Advice of Counsel [United States]

Mallory objects to the government's proposed jury instruction 5.1 as argumentative.  The government incorrectly states the elements of the reliance-on-counsel defense.  To support its position, the government cites the 1978 case United States v. Polytarides, 584 F.2d 1350, 1352 (4th Cir. 1978).  (ECF No. 755, p. 29).  However, this is no longer the law.  "More recently, the Fourth Circuit consolidated [the Polytarides] elements."  Abusamhadaneh v. Taylor, 873 F. Supp. 2d 682, 718 (E.D. Va. 2012).  "In order to provide reliance on defense of counsel, [the defendant] must prove that he (a) fully disclosed of all pertinent facts to an expert, and (b) in good faith relied on the expert's advice."  Id. (citing United States v. Butler, 211 F.3d 826, 833 (4th Cir. 2000); United States v. Miller, 658 F.2d 235, 238 (4th Cir. 1981)).  The elements as stated in Butler and Abusamhadaneh have been recently reiterated by the Fourth Circuit in Tuomey.  "[T]o establish the advice-of-counsel defense, the defendant must show the '(a) full disclosure of all pertinent facts to counsel, and (b) good faith reliance on counsel's advice.'"  Tuomey, 792 F.3d at 381 (citing Butler, 211 F.3d at 833)).

Further, the government's proposed instruction unduly highlights certain features of the case, is repetitive, and is misleading.  See Vanskike, 665 F.2d at 201-02.  The government proposes that the Court instruct the jury that "[t]he mere fact of consulting an attorney is insufficient."  (ECF No. 755, p. 28).  However, the Court will have already instructed the jury as to what elements the defendant must prove.  If the defendant only proved that she "consulted" with an attorney, she would not have "automatic immunity."  Tuomey, 792 F.3d at 381.

Similarly, the government proposes that the Court instruct the jury that "[i]n determining whether a defendant reasonably relied on the advice of its counsel, you may consider all the advice given to a defendant by any source."  (ECF No. 755, p. 28).  However, the Court will have already

instructed the jury that "it will be your duty to determine the facts from all the evidence presented in the case." (*See* Court's Opening Charge, p. 1). Moreover, the government proposed instruction is incorrect, or unclear at best, because the jury *cannot* consider all the advice given to a defendant by any source. As will be instructed by the Court, the jury "may consider only the testimony and exhibits allowed into evidence. Certain things are not evidence and you may not consider them in deciding the facts." (*See* Court's Opening Charge, p. 1).

### 6.1    Measure of Damages [United States]

Mallory objects to the government's proposed jury instruction 6.1. It is argumentative and incorrectly states the law. The measure of damages is not "the full amount the United States paid out for the claim." (ECF No. 755, p. 30). Rather, it is the amount the government proves it paid above and beyond what it would have paid if the claim had not been false. The government is not damaged by the entire amount it paid to a medical provider who submitted a false or fraudulent claim. The government is damaged by the amount above and beyond what it would have paid *some* provider to give medically necessary services to a beneficiary. In other words, the government received some value by eliminating the need to pay for a service that it would otherwise be required to pay a different provider.

To support its position here, the government quotes <u>Tuomey</u> wherein the Court stated that "[b]y reimbursing [defendant] for services that it was legally prohibited from paying [under the Stark Law], the government has suffered injury equivalent to the full amount of the payments." (ECF No. 755, p. 30). The underlying violation in <u>Tuomey</u> was the Stark Law, not the Anti-Kickback Statute. Congress has expressly forbidden the government from paying claims submitted in violation of the Stark Law and the Stark Law requires disgorgement of any amounts collected for services. 42 U.S.C. § 1395nn(g)(1)-(2) (providing "[n]o payment may be made under

20

this subchapter for a designated health service which is provided in violation of subsection (a)(1) of this section. . . . If a person collects any amounts that were billed in violation of subsection (a)(1) of this section, the person shall be liable to the individual for, and shall refund on a timely basis to the individual, any amounts so collected"). Congress has not provided a similar provision in the Anti-Kickback Statute.

Outside of the Stark Law where disgorgement is required by statute, the Fourth Circuit has rejected the view espoused by the government here. In <u>U.S. ex rel. Harrison v. Westinghouse Savannah River Co.</u>, 352 F.3d 908 (4th Cir. 2003), the relator sought disgorgement of all monies paid by the Department of Energy to the defendant as damages. <u>Id.</u> at 922. The relator claimed that the subcontract at issue was "void *ab initio* because of the fraud perpetuated by [the defendant] and, therefore, the $9 million that the DOE ultimately paid for the work [the subcontractor] performed under the subcontract should be disgorged." <u>Id.</u> The district court ruled that the relator "failed to prove any actual damages suffered by the government because there was no evidence that it cost the government more to have [the subcontractor] perform the subcontract than any other firm." <u>Id.</u> The Fourth Circuit agreed: "Although [the defendant] ran afoul of the fair bidding requirements, there was no evidence adduced at trial suggesting that [the subcontractor] failed to perform the work that it was required to perform under the subcontract or that the government did not receive the benefit of the work performed. [The relator] presented no evidence that the government did not get what it paid for or that another firm could have performed the work for less." <u>Id.</u> at 923; *see also* <u>United States ex rel. Davis v. District of Columbia</u>, 679 F.3d 832, 839-40 (D.C. Cir. 2012) ("to establish damages, the government must show not only that the defendant's false claims caused the government to make payments that it would have otherwise withheld, but also that the performance the government received was worth less than what it

believed it had purchased" and finding it irrelevant that the government would not have paid the claim if it had known of the defendant's conduct).

**6.2     Reasonable Certainty [United States]**

Mallory objects to the government's proposed jury instruction 6.2.  It is argumentative, incorrectly states the law, is confusing and misleading, repetitive, and is not objective.  *See* Vanskike, 665 F.2d at 201-02.  The law requires that the government prove damages with "reasonable certainty."   U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc., 370 F. Supp. 2d 18, 55 (D.D.C. 2005).  In other words, the government must prove "both that the fact of the damages is certain and the amount of damages can be reasonably computed."  Id. (citing John T. Boese, Civil False Claims and Qui Tam Actions, *Appendix F: Sample Jury Instructions (2) in a Reverse False Claim Case*).  The government's proposed jury instruction omits this requirement.

Further, "reasonable certainty" is not synonymous with a "possibility" as asserted by the government.  (ECF No. 755, p. 31) (stating "you should not award any amount for injury or damage, which *although possible*, is wholly remote or left to conjecture") (italics added).  An event could "possibly" occur in the future.  However, that does not mean that there is a "reasonable certainty" that the event will occur.

The government incorrectly uses the term "wholly" in its proposed instruction.  (ECF No. 755, p. 11) (stating "you should not award any amount for injury or damage, which although possible, is *wholly* remote or left to conjecture") (italics added).   "Wholly" means "the whole amount" or "entirely."   It is not that "the whole amount" of damages must be remote or left to conjecture for the jury to find damages in the amount of zero.  Rather, the jury cannot base their calculation "on speculation or guesswork."  United States v. Sci. Applications Int'l Corp., 958 F. Supp. 2d 53, 78 (D.D.C. 2013) ("a jury's damages calculation cannot be 'based on speculation or

guesswork'") (quoting Joel M. Androphy, *Federal False Claims Act and Qui Tam Litigation* § 11.08 (2013)); *see also* <u>Bigelow v. RKO Radio Pictures</u>, 327 U.S. 251, 264, 66 S. Ct. 574, 579–80, 90 L. Ed. 652 (1946) ("even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork"). Even when a defendant's fraudulent conduct makes quantifying damages "virtually impossible," the government still must prove damages that can be "reasonably computed." *See* <u>Harrison</u>, 352 F.3d at 922 (rejecting the relator's argument that the defendant's conduct made quantifying damages "virtually impossible" and stating that "[t]he FCA specifically places the burden of proving damages on the government"); <u>Ervin & Assocs., Inc.</u>, 370 F. Supp. 2d at 55 (the government must prove "both that the fact of the damages is certain and the amount of damages can be reasonably computed").

Moreover, the government's proposed instruction that "[y]ou may base your evaluation of 'reasonable certainty' on opinion evidence" is duplicative because the Court will give its instruction on evidence. (*See* Court's Opening Charge, pp. 3-4). Further, it is argumentative because it gives undue prominence to the government's theory and singles out the testimony of the government's expert. *See* <u>Vanskike</u>, 665 F.2d at 201-02. The government's expert will likely be the only "opinion evidence" regarding damages.

### 7.1     Number of False Claims [United States]

Mallory objects to the government's proposed jury instruction 7.1. It is argumentative, is confusing, and does not fully or accurately state the law. The government must prove each element on its counts on a claim-by-claim basis. *See* BlueWave's Proposed Jury Instruction No. 42 and the citations therein. Mallory objects to all instructions requested but not given, including the BlueWave instructions that she joined. Mallory does not waive and hereby reserves the right to

make any additional objections to the Court's jury instructions and to the Court's failure to give requested instructions.

This 12th day of December, 2017                    Respectfully submitted,

                                                   /s/ Beattie B. Ashmore
                                                   Beattie B. Ashmore, #5215
                                                   650 E. Washington Street
                                                   Greenville, SC  29601
                                                   Tel.: (864) 467-1001
                                                   Fax: (864) 672-1406
                                                   Beattie@BeattieAshmore.com