# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| The United States of America and the States of North Carolina, California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, New Jersey, New York, Tennessee, Texas, Virginia and Wisconsin, *ex rel.* Scarlett Lutz, Kayla Webster, Dr. Michael Mayes and Chris Reidel,<br><br>   Plaintiffs,<br><br>vs.<br><br>Berkeley Heartlab, Inc., Bluewave Healthcare Consultants, Inc., Latonya Mallory, Floyd Calhoun Dent, III and Robert Bradford Johnson,<br><br>   Defendants. | **CA No.**: **9:14-cv-00230-RMG**<br>(Consolidated with 9:11-cv-1593-RMG and 9:15-cv-2485-RMG) |

## UNITED STATES' SUPPLEMENTAL JURY INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 51(a), the United States respectfully proposes the attached supplemental jury instructions (Dkt. No. 755) to include new instruction 3.7 and revised instructions 2.16, 3.4, and 5.1 as indicated in underlined or strikethrough text.

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
Civil Division

LANCE CRICK
Acting United States Attorney
First Assistant United States Attorney

By:    s/James C. Leventis, Jr.
JAMES C. LEVENTIS, JR. (#9406)
JENNIFER J. ALDRICH (#6035)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, S.C. 29201
Telephone (803) 929-3000
James.Leventis@usdoj.gov

MICHAEL D. GRANSTON
PATRICIA L. HANOWER
ELIZABETH STRAWN
MICHAEL EDMUND SHAHEEN
CHRISTOPHER TERRANOVA
MICHAEL KASS
Attorneys, Civil Division
United States Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, DC  20044
Telephone:  (202) 616-4203
Christopher.Terranova@usdoj.gov

January 29, 2018

**2.16.   Invocation of Fifth Amendment [United States]**

You have heard testimony in which ~~certain~~ <u>a</u> witness~~es~~ invoked the Fifth Amendment to refuse to answer ~~one or more~~ <u>certain</u> questions.  A witness has a constitutional right to refuse to answer a question on the ground that it may tend to incriminate him or her.  However, you may consider a witness' refusal to answer a question as evidence in this case.

In addition, you may make certain inferences from a witness' refusal to answer a question.  You may, but are not required to, infer by such refusal that the answer would have been unfavorable to the witness' interest.  And, if you find that such witness was a member of a conspiracy to violate the False Claims Act, you may, but are not required to, infer by such refusal that the witness' answer would have been unfavorable to the interest of any co-conspirator.

Any inferences you may draw should be based on all of the facts and circumstances in this case as you may find them.


Source:     *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 590 (4th Cir. 2015) ("[I]n the context of the Fifth Amendment's privilege against self-incrimination, . . . a court may draw 'adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318, (1976))); *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179, 183–84 (4th Cir. 2002); *Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300, 1311–12 (11th Cir. 2014) (concluding, where evidence suggested witness "knew of and participated in" the alleged fraud, "we have no difficulty concluding that the adverse inferences drawn against [defendant] based upon [witness'] invocation of the Fifth Amendment privilege" were trustworthy); *LiButti v. United States*, 107 F.3d 110, 123–24 (2d Cir. 1997); *Brink's Inc. v. City of New York*, 717 F.2d 700, 707–10 (2d Cir. 1983) (approving instruction where defendant's former employees asserted Fifth Amendment privilege at trial); *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986); *Rosebud Sioux Tribe v. A&P Steel, Inc.*, 733 F.2d 509, 522–23 (8th Cir. 1984); *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006); Jury Instructions, *McClintick v. Leavitt*, No. 05-cv-2880, Dkt. No. 81 at 16 (D. Md. June 26, 2008).

### 3.4. Remuneration [United States]

<u>Any payment or thing of value, regardless of whether it is fair market value for services performed, is "Remuneration" under the Anti-Kickback Statute</u> ~~includes any payment or other benefit, including the waiver of a financial obligation, as long as at least one purpose of the payment or benefit was to induce referrals, even if the payment or benefit was also intended to compensate for professional services~~.

Thus, remuneration includes not only sums for which no actual service was performed but also those amounts for which some professional time was expended.

<u>Sources</u>: 42 U.S.C. § 1320a-7b(b)(1)–(2); Order on Mots. to Dismiss, Dkt. No. 268 at 10 n.3 ("[T]he appropriate test for whether the waiver of a copay constitutes remuneration is whether the complaint has alleged that at least one of the purposes of the waiver was to induce patient referrals."); *United States v. Greber*, 760 F.2d 68, 71–72 (3d Cir. 1985) (holding that AKS is violated if "one purpose of the payment was to induce future referrals," "even if the payments were also intended to compensate for professional services."); *United States v. Kats*, 871 F.2d 105, 108 (9th Cir. 1989) (following *Greber*); *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 29–31 (1st Cir. 1989) ("Giving a person an opportunity to earn money may well be an inducement to that person to channel potential Medicare payments towards a particular recipient."); *United States v. Hancock*, 604 F.2d 999, 1001–02 (7th Cir. 1979) (finding indictments "adequately allege[d] the crime of receiving kickbacks" in the form of "handling fees" despite defendants' arguments that such fees were for the "services of obtaining, packaging, and sending the samples") (applying 1972 version of Medicare AKS); *United States v. Borrasi*, 639 F.3d 774, 780–82 (7th Cir. 2011); *United States v. McClatchy*, 217 F.3d 823, 835 (10th Cir. 2000), *cert. denied*, 531 U.S. 1015 (2000); *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998); *United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 68 (D. Mass. 2011) ("Congress's intent in placing the term 'remuneration' in the statute in 1977 was to cover the transferring of anything of value in any form or manner whatsoever." (quoting 56 Fed. Reg. 35,952, 35,958 (July 29, 1991))); Eric Wm. Ruschky, Pattern Jury Instrs. For Fed. Crim. Cases, D.S.C. at 582 (Aug. 15, 2016 Online Ed.) (citing *Greber*); HHS-OIG, *Special Fraud Alert: Routine Waiver of Copayments or Deductibles Under Medicare Part B*, 59 Fed. Reg. 65,372, 65,374–75 (Dec. 19, 1994) ("When providers, practitioners or suppliers forgive financial obligations for reasons other than genuine financial hardship of the particular patient, they may be unlawfully inducing that patient to purchase items or services from them.").

### 3.7.   AKS Safe Harbors [United States]

You have heard references to safe harbors to the Anti-Kickback Statute for employees and personal services contracts. There is no safe harbor that applies to the conduct alleged in this case.

Sources:   42 C.F.R. § 1001.952(d) (safe harbor for personal services contracts) (requiring, among other things, that "[t]he term of the agreement is for not less than one year" and "[t]he aggregate compensation paid to the agent over the term of the agreement is set in advance . . . and is not determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare, Medicaid or other Federal healthcare programs"); *id.* § 1001.952(i) (safe harbor for employee compensation); *Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti-Kickback Provisions*, 56 Fed. Reg. 35,952, 35,981 (July 29, 1991) (in response to request that OIG "extend this [employee] exception to apply to independent contractors paid on a commission basis," OIG stated it "continue[s] to reject this approach because of the existence of widespread abusive practices by sales persons who are independent contractors and, therefore, who are not under appropriate supervision and control").

### 5.1. Good Faith Reliance on Advice of Counsel [United States]

Each defendant has asserted an affirmative defense of good faith reliance on the advice of counsel. You may consider the advice given by counsel to a defendant in deciding whether the defendant acted knowingly and willfully if you find that, before taking action, the defendant:

(1) in good faith sought the advice of an attorney whom the defendant <u>reasonably</u> considered competent for the purpose of securing advice on the lawfulness of the defendant's possible future conduct;

(2) made a full and accurate report to the attorney of all material facts which the defendant knew;

(3) reasonably relied on the attorney's advice; and

(4) acted strictly in accordance with the advice of the attorney who had been given a full report.

The mere fact of consulting an attorney is insufficient. In determining whether a defendant reasonably relied on the advice of its counsel, you may consider all the advice given to a defendant by any source. <u>In determining whether a defendant reasonably considered an attorney competent for providing advice about the False Claims Act or Anti-Kickback Statute, you may consider the attorney's experience, training, and knowledge regarding health care law.</u>

Sources:   Order on Summ. J. Mots., Dkt. No. 693 at 16–17 ("To prevail on an advice of counsel defense, the Blue Wave Defendants must establish by a preponderance of the evidence that they: (1) sought the advice in good faith; (2) provided full and accurate information to their attorneys; (3) reasonably relied on the advice; and (4) faithfully followed that advice."); *United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011); *see also Williamson v. United States*, 207 U.S. 425, 453 (1908) ("[N]o man can willfully and knowingly violate the law and excuse himself from the consequences thereof by pleading that he followed the advice of counsel."); *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 381 (4th Cir. 2015) ("[I]n determining whether [defendant] reasonably relied on the advice of its counsel, the jury was entitled to

2

consider *all* the advice given to [defendant] by *any* source." (emphasis in original)); *Tuomey*, 792 F.3d at 381 ("'[C]onsultation with a lawyer confers no automatic immunity from the legal consequences of conscious fraud.'" (quoting *United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963), *cert. denied*, 374 U.S. 831 (1963)); *United States v. Polytarides*, 584 F.2d 1350, 1352–53 (4th Cir. 1978) ("A crucial element in the defense of acting upon the advice of counsel is that defendant secured the advice on the lawfulness of his [p]ossible future conduct."); *United States v. Benson*, 941 F.2d 598, 614 (7th Cir. 1991) ("[T]o negate willfulness counsel's advice must create (or perpetuate) an honest misunderstanding of one's legal duties. If a person is told by his attorney that a contemplated course of action is legal but subsequently discovers the advice is wrong or discovers reason to doubt the advice, he cannot hide behind counsel's advice to escape the consequences of his violation."), *modified*, 957 F.2d 301 (7th Cir. 1992); *United States v. Rice*, 449 F.3d 887, 896–97 (8th Cir. 2006) ("[A] defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction."), *cert. denied*, 549 U.S. 1040 (2006); *United States v. Nordbrock*, 38 F.3d 440, 445–46 (9th Cir. 1994); Eric Wm. Ruschky, Pattern Jury Instrs. for Fed. Crim. Cases, D.S.C. at 631 (Aug. 15, 2016 Online Ed.) ("Good faith reliance on the advice of counsel is not a complete defense to an allegation of willful misconduct, but is merely one factor the jury may consider when determining the defendant's state of mind.").[1]

---

[1] The United States reserves the right to argue, based on the evidence at trial, that an advice of counsel instruction is not warranted. *See, e.g.*, *United States v. Powell*, 680 F.3d 350, 356–57 (4th Cir. 2012) (holding that defendant "failed to establish an evidentiary foundation" for advice of counsel instruction where "no evidence indicated that [defendant] disclosed facts, pertinent or otherwise, to [the company's counsel]" and such counsel "acted only as a scrivener and did not provide legal advice when drafting the letter"), *cert. denied*, 568 U.S. 922 (2012); *United States v. Butler*, 211 F.3d 826, 833 (4th Cir. 2000) (holding that evidence of defendant's "interactions with attorneys" did not "entitle [defendant] to an instruction regarding reliance on the advice of counsel"), *cert. denied*, 531 U.S. 1149 (2001); *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (holding that "no instruction was warranted" where defendant did not "produce evidence suggesting that his attorney advised him to act in any particular way" and thus defendant could not have "acted strictly in accordance with the advice of his attorney").

3