**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| The United States of America and the States of North Carolina, California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, New Jersey, New York, Tennessee, Texas, Virginia and Wisconsin, *ex rel*. Scarlett Lutz, Kayla Webster, Dr. Michael Mayes and Chris Reidel, <br><br> Plaintiffs, <br><br> vs. <br><br> Berkeley Heartlab, Inc., BlueWave Healthcare Consultants, Inc., Latonya Mallory, Floyd Calhoun Dent, III and Robert Bradford Johnson, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **CA No.**: **9:14-cv-00230-RMG** <br> (Consolidated with 9:11-cv-1593-RMG and 9:15-cv-2485-RMG) |

**UNITED STATES' MOTION FOR ENTRY OF JUDGMENT
AND MEMORANDUM IN SUPPORT**

On January 31, 2018, a twelve-member jury returned a unanimous verdict, finding that Defendants Floyd Calhoun Dent, III, Robert Bradford Johnson, and Latonya Mallory violated the False Claims Act (FCA), 31 U.S.C. §§ 3729–33. (Dkt. No. 870.) The jury found Dent, Johnson, and Mallory responsible for 35,074 false claims for services by Health Diagnostics Laboratories (HDL), for which Medicare and TRICARE paid $16,601,591. (*Id.* at 1–2.) The jury also found Dent and Johnson responsible for 3,813 false claims for services by Singulex, for which Medicare and TRICARE paid $467,935. (*Id.* at 2–3.)

For the below reasons, the United States respectfully requests that the Court: (a) enter judgment for the United States on the FCA Counts I–III of its Complaint (Dkt. No. 75) in the amount of $111,872,273 against Dent, Johnson, and Mallory, and in the additional amount of

$3,136,305 against Dent and Johnson; and (b) sever and hold in abeyance the common law Counts IV (payment by mistake of fact) and V (unjust enrichment) of its Complaint.

### A.     Request for Judgment Pursuant to Rule 54(b)

Pursuant to Federal Rule of Civil Procedure 54(b), the United States respectfully requests that the Court find that there is no just reason for delay in entering a final judgment on the FCA causes of action, and sever the remaining causes of action, specifically, the common law causes of action in Counts IV (payment by mistake of fact) and V (unjust enrichment) of the United States' Complaint (Dkt. No. 75).  Judgment on the FCA causes of action would be "a decision upon a cognizable claim" and "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).  "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal," and such discretion to act as a "'dispatcher'" of claims for appeal "is to be exercised 'in the interest of sound judicial administration,'" "tak[ing] into account judicial administrative interests as well as the equities involved."  *Id.* at 8 (quoting *Sears*, 351 U.S. at 437).

Here, there is no just reason for delay in entering judgment on the FCA causes of action. First, the jury's finding that the United States had not proven that some of the 327,956 alleged false claims violated the FCA has no binding or preclusive effect on the litigation of the common law causes of action, due to the higher scienter standard that applies to the FCA as compared to the common law causes of action for payment by mistake of fact and unjust enrichment.  *See* 31 U.S.C. 3729(b)(1) (defining "knowingly" for purposes of FCA); *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970) (allowing recovery for payment by mistake where factfinder found

claims did not violate FCA); *United States v. Applied Pharm. Consultants, Inc.*, 182 F.3d 603, 605, 609 (8th Cir. 1999) (same, for unjust enrichment claims); *accord United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 667 (4th Cir. 1996) ("[C]ommon law actions are available to the government to supplement those remedies found in federal statutes, as long as the statute does not expressly abrogate those rights."). For the 38,887 alleged false claims that the jury found violated the FCA, the United States cannot recover damages twice. *See, e.g.*, *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Pine Bluff*, 354 F.3d 945, 950–51 (8th Cir. 2004) ("[P]ursuit of consistent remedies, even to final adjudication" is permitted, "so long as the plaintiff receives but one satisfaction.").

Second, appellate review of the FCA judgment would not be mooted by any future developments before the Court regarding the common law causes of action. On the contrary, if the Court enters a Rule 54(b) order on the FCA causes of action, the common law causes of action could be held in abeyance, and if the FCA judgment is affirmed without modification on appeal, then Counts IV and V could be dismissed once the FCA judgment becomes final and unappealable. Further, if such order were entered, no claims or counterclaims would remain pending that could result in a setoff against the FCA judgment. *See MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 856 (4th Cir. 2010).

Third, economic and solvency considerations, as well as judicial administrative interests, weigh in favor of entering a final judgment on the FCA causes of action and holding in abeyance the common law causes of action. Here, defendants' resources may be insufficient to satisfy even the minimum FCA judgment authorized by law, and thus judicial resources would be preserved by holding in abeyance common law causes of action for additional damages which the defendants likely could not satisfy. Moreover, proceedings regarding the common law

causes of action would require defendants to expend even more of their resources, thus impairing the United States' ability to collect on the FCA judgment. *See Curtiss-Wright*, 446 U.S. at 12 (where, in light of defendant's "financial position," further proceedings would impair plaintiff's "ability to collect on the judgment, that would weigh in favor" of Rule 54(b) judgment).

For these reasons, the United States respectfully requests that the Court enter judgment pursuant to Rule 54(b) on the FCA causes of action (Counts I–III) in the amounts described in Section B below, and sever and hold in abeyance the common law causes of action (Counts IV and V). In the alternative, if the Court were to: (a) decline to enter a final judgment pursuant to Rule 54(b) on the FCA causes of action; (b) grant a new trial on the FCA causes of action; or (c) enter a final judgment on the FCA causes of action for less than the amounts requested by the United States or against fewer of the defendants than were found liable by the jury, then the United States respectfully requests that the Court schedule such post-trial evidentiary proceedings as the Court deems necessary to reach a verdict on Counts IV and V of the United States' Complaint.

### B.     Amount of Requested FCA Judgment

As discussed below, the United States moves for entry of judgment under Counts I–III of its Complaint (the FCA causes of action) in the amount of $111,872,273 against Dent, Johnson, and Mallory, and in the additional amount of $3,136,305 against Dent and Johnson.

1. **Joint and Several Liability.** "Where one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty." *Mortgages, Inc. v. U.S. District Court for the District of Nevada*, 934 F.2d 209, 212 (9th Cir. 1991); *accord United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885, at *4 (D.S.C. May 23, 2002) (collecting

4

cases). Given the jury verdict of FCA liability, Dent, Johnson, and Mallory are jointly and severally liable for the treble damages and penalties for the HDL claims, and Dent and Johnson are jointly and severally liable for the treble damages and penalties for the Singulex claims.

    2. **Treble Damages.** The jury has determined the total value of the false claims. Under the FCA, the Court is required to apply a treble multiplier. *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003); 31 U.S.C. § 3729(a)(1). A reduced multiplier of "not less than 2 times the amount of damages which the Government sustains," is not applicable here because, among other things, defendants did not voluntarily disclose to the United States all information known to them about their false claims violations within thirty days after they first obtained the information and before any FCA civil action had commenced. § 3729(a)(2); *Cook County*, 538 U.S. at 122. The applicable multiplier for FCA damages is mandatory. *Fresenius Med. Care Holdings, Inc. v. United States*, Civ. A. No. 08-12118-DPW, 2013 WL 1946216, at *6 (D. Mass. May 9, 2013) ("[T]he government need only prove its single damages, after which multiple damages are applied as a matter of course."), *aff'd*, 763 F.3d 64 (1st Cir. 2014); *Cook County*, 538 U.S. at 132. Thus, Dent, Johnson, and Mallory are liable for treble damages of $49,804,773 for the HDL claims, and Dent and Johnson are liable for treble damages of $1,403,805 for the Singulex claims.

    3. **Penalty Range Per False Claim.** As applicable here, where the claims at issue were submitted during the 2010 to 2014 time period, persons found liable under the FCA are subject to "civil penalties amounting to a minimum of $5,500 and a maximum of $11,000." *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 401 n.10 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 83 (2014); *Cook County*, 538 U.S. at 123 n.1 ("The [FCA] penalty

is currently $5,500 to $11,000.") (citing Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, § 5; 28 U.S.C. § 2461 note); 64 Fed. Reg. 47099, 47103–04 (1999).

4. **Requested Penalties.** Given the jury verdict, the United States could seek penalties under the FCA for 38,887 false claims for a total of between $213,878,500 and $427,757,000 in penalties. However, it is well settled that the United States has discretion under the FCA "to accept reduced penalties." *Bunk*, 741 F.3d at 408. As the Fourth Circuit has suggested, a plaintiff's discretion to willingly accept a lesser judgment "is virtually unbounded." *Id.* at 406 (citing *United States v. Mackby*, 339 F.3d 1013, 1015 (9th Cir. 2003) (upholding penalties sought by United States on 111 of 1459 false claims)), *cert. denied*, 541 U.S. 936 (2004). In reliance on Defendants' sworn financial statements, the United States exercises its discretion to accept reduced penalties arising from the jury's verdict. Specifically, the United States seeks FCA penalties on 11,285 HDL claims and 315 Singulex claims. For each such claim, the United States seeks the minimum penalty authorized by law—$5,500—which would result in total FCA penalties of $62,067,500 for the HDL claims and $1,732,500 for the Singulex claims. In total, the United States is seeking less than 15% of the maximum penalties available under the FCA.

5. **Eighth Amendment.** Although it is sometimes argued that the Eighth Amendment may limit FCA recoveries, "[i]t is far from clear that the Excessive Fines Clause applies to civil actions under the False Claims Act." *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (citing *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998) (payments are "fines" under the Eighth Amendment only if they are "punishment for an offense"); *Hudson v. United States*, 522 U.S. 93, 104 (1997) ("money penalties" have not "historically been viewed as punishment")).

Even if the Excessive Fines Clause could apply to civil recoveries under the FCA, the judgment sought by the United States is not "grossly disproportional" to the gravity of the

defendants' conduct. *Bunk*, 741 F.3d at 408. Under the Eighth Amendment, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," to which "substantial deference" is accorded. *Bajakajian*, 524 U.S. at 336. Here, Defendants Dent, Johnson, and Mallory were found to have defrauded federal health care programs, and the prevalence of such fraud, as often portrayed in the media, "shakes the public's faith in the government's competence and may encourage others similarly situated to act in a like fashion." *Bunk*, 741 F.3d at 409; *accord Mackby*, 339 F.3d at 1019 ("Fraudulent claims make the administration of Medicare more difficult, and widespread fraud would undermine public confidence in the system."). As the Fourth Circuit recently reiterated:

> No proof is required to convince one that to the Government a false claim, successful or not, is always costly. Just as surely, against this loss the Government may protect itself, though the damage be not explicitly or nicely ascertainable. The FCA seeks to reimburse the Government for just such losses. For a single false claim, the civil penalty would not seem exorbitant. Furthermore, even when multiplied by a plurality of impostures, it still would not appear unreasonable when balanced against the expense of the constant Treasury vigil they necessitate.

*Bunk*, 741 F.3d at 409 (quoting *Toepleman v. United States*, 263 F.2d 697, 699 (4th Cir. 1959), *cert. denied*, 359 U.S. 989 (1959)) (brackets omitted). The fraud at issue here was "not a *de minimis* regulatory violation"; violating the Anti-Kickback Statute "is a felony punishable by five years in prison, and it requires the violator to act 'knowingly and willfully,'" and the Social Security Act prohibits United States agencies from reimbursing for "laboratory tests they know to be medically unnecessary." (Materiality Order, Dkt. No. 795 at 4–5.) Giving substantial deference to Congress' judgment in enacting the FCA, the amount sought by the United States appropriately reflects the gravity of defendants' fraud scheme—which caused the United States to pay over $17 million for over 38,000 false claims—and provides the necessary and

7

appropriate deterrent effect going forward. *See Bunk*, 741 F.3d at 400, 408–10 (approving $24 million in FCA penalties, where the treble damages would have been $2,595,000 absent an offset). Lastly, the "substantial difference" between the penalties sought by the United States (about $64 million) and "the maximum available penalties" (about $428 million) "weighs against a finding of gross disproportionality." *Mackby*, 339 F.3d at 1018.

      6. **Fifth Amendment.** As with the Excessive Fines Clause, it is far from clear that the Due Process Clause limits awards authorized by the FCA. In a series of due process cases, the Supreme Court expressed concern with an absence of "proper standards that will cabin the jury's discretionary authority" to award punitive damages. *Philip Morris USA v. Williams*, 549 U.S. 346, 352 (2007) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). But a jury does not award punitive damages in FCA cases. *See Cook County*, 538 U.S. at 132 ("Treble damages [under the FCA] certainly do not equate with classic punitive damages [awarded by a jury]."). Instead, "Congress provided for treble damages and an automatic civil monetary penalty per false claim." *Mackby*, 339 F.3d at 1017–18. By providing for treble damages and statutory penalties in the FCA, Congress gave fair notice of the sanctions that may be imposed for false claims and helped "to assure the uniform general treatment of similarly situated persons that is the essence of law itself." *See Gore*, 517 U.S. at 587. The FCA thus satisfies the Supreme Court's "constitutional concern" that sanctions must reflect "the application of law, rather than a decisionmaker's caprice." *See id.* Indeed, a court reviewing punitive damages must "accord 'substantial deference' to legislative judgments concerning appropriate sanctions for the conduct at issue," and a key guidepost in the Supreme Court's analysis is the amount of "civil penalties authorized or imposed in comparable

cases." *Id.* at 575, 583.  In sum, Congress' judgment as to FCA sanctions satisfies the Supreme Court's constitutional concerns about punitive damages and is entitled to substantial deference.

Even if it were proper to analyze treble damages and statutory penalties under the FCA as if they were jury awards of punitive damages, the judgment sought by the United States would not violate the Fifth Amendment.  As the Fourth Circuit recently noted, it sees "no reason to believe" that the "approach to punitive damages under the Fifth Amendment would differ dramatically from analysis under the Excessive Fines Clause."  *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 388 (4th Cir. 2015).  In *Tuomey*, the Fourth Circuit analyzed the Fifth and Eighth Amendment issues together by considering two of the three guideposts used by the Supreme Court to evaluate punitive damages under the Fifth Amendment.  *See id.* at 388–90.  (Notably, the guidepost that was not considered, *id.* at 388 n.19, requires "'substantial deference' to legislative judgments concerning appropriate sanctions."  *Gore*, 517 U.S. at 575, 583.)

The first guidepost—"the degree of reprehensibility of the defendant's misconduct"—supports the FCA judgment sought by the United States.  Like the Stark Law, at issue in *Tuomey*, the Anti-Kickback Statute "expresses Congress's judgment of the reprehensibility of the conduct at issue by deeming services provided in violation of the law worthless."  *Tuomey*, 792 F.3d at 388.  Moreover, the FCA's treble damages and penalty provisions show that "'making a false claim to the government is a serious offense.'"  *Id.* (quoting *Mackby*, 339 F.3d at 1018); *see also* Materiality Order, Dkt. No. 795 at 4–5.  In addition, Defendants' conduct "involved repeated actions," *State Farm*, 538 U.S. at 419, as they caused the submission of 38,887 false claims.  A substantial judgment is needed "to reflect the sheer breadth of the fraud [defendants] perpetrated upon the federal government."  *Tuomey*, 792 F.3d at 389.  Where, as here, "an enormous public undertaking spawns a fraud of comparable breadth," "high penalties" help to "mak[e] the

9

government completely whole" and "dissuade such a massive course of fraudulent conduct." *Id.* Nor were defendants' actions the result of a "mere accident." *State Farm*, 538 U.S. at 419. Rather, the jury determined that defendants caused the submission of false claims "knowingly," that is, with actual knowledge, in deliberate ignorance, or with reckless disregard that the claims were false. § 3729(b)(1). Under the circumstances, "strong medicine is required to cure the defendant[s'] disrespect for the law." *Gore*, 517 U.S. at 577.

The second guidepost—the ratio of "punitive" to compensatory damages—also supports the United States' requested judgment. "There is no question that some liability beyond the amount of the fraud is usually 'necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims.'" *Cook County*, 538 U.S. at 130 (quoting *United States v. Bornstein*, 423 U.S. 303, 315 (1976)). Monetary harm to the Government includes "not merely the amount of the fraud itself, but also ancillary costs, such as the costs of detection and investigation, that routinely attend the Government's efforts to root out deceptive practices directed at the public purse." *Id.* at 130–31 (quoting *United States v. Halper*, 490 U.S. 435, 445 (1989)). Under the FCA, "as much as 30 percent of the Government's recovery" may be diverted to a private relator who began the action, and "may well serve not to punish, but to quicken the self-interest" of a relator. *Id.* at 131; § 3730(d)(1)–(2) (eligible FCA relator receives "at least 15 percent" of "the proceeds of the action," which includes amounts collected from "the civil penalty and damages"). Where there is a *qui tam* relator to be paid, "the remaining double damages" is left to "provide elements of make-whole recovery beyond mere recoupment of the fraud." *Cook County*, 538 U.S. at 131 (citing *Bornstein*, 423 U.S. at 315 & n.11 ("[D]ouble damages are necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims.")). "[E]ven when there is no *qui*

10

*tam* relator to be paid," treble damages "may also be necessary for full recovery" in order to compensate for "prejudgment interest, which is usually thought essential to compensation" and "the consequential damages that typically come with recovery for fraud." *Id.*

Even if the Supreme Court's statements about double and treble damages in *Cook County* and *Bornstein* were ignored, and the compensatory damages for purposes of the Fifth Amendment analysis were limited to the single damages award and the fifteen percent minimum relator's share of treble damages and penalties—then the ratio of "punitive" to compensatory damages would be less than 2.4–to–1 for the HDL and Singulex claims. This falls well short of exceeding the 4–to–1 ratio that the Supreme Court has indicated "might be close to the line of constitutional impropriety" for jury-awarded punitive damages. *State Farm*, 538 U.S. at 425; *see also Rogan*, 517 F.3d at 454 ("[O]ne would think that a fine expressly authorized by statute could be higher than a penalty selected *ad hoc* by a jury."). In *Tuomey*, where the Fourth Circuit found "the ratio of punitive damages to compensatory damages is approximately 3.6–to–1," it "therefore conclude[d] that the damages award is constitutional under the Fifth and Eighth Amendments." 792 F.3d at 389–90. In sum, the FCA judgment sought by the United States, while substantial, is not excessive.

\*     \*     \*

For the above reasons, pursuant to Rule 54(b), the United States respectfully requests entry of judgment in its favor on Counts I–III of its Complaint in the amount of $111,872,273 against Dent, Johnson, and Mallory, and in the additional amount of $3,136,305 against Dent and Johnson, and severance of the common law claims in Counts IV and V.

        Respectfully submitted,

        CHAD A. READLER
        Acting Assistant Attorney General
        Civil Division

        LANCE CRICK
        Acting United States Attorney
        First Assistant United States Attorney

By:   s/James C. Leventis, Jr.
        JAMES C. LEVENTIS, JR. (#9406)
        JENNIFER J. ALDRICH (#6035)
        Assistant United States Attorneys
        1441 Main Street, Suite 500
        Columbia, S.C. 29201
        Telephone (803) 929-3000
        James.Leventis@usdoj.gov

        MICHAEL D. GRANSTON
        PATRICIA L. HANOWER
        ELIZABETH STRAWN
        MICHAEL EDMUND SHAHEEN
        CHRISTOPHER TERRANOVA
        MICHAEL KASS
        Attorneys, Civil Division
        United States Department of Justice
        P.O. Box 261, Ben Franklin Station
        Washington, DC  20044
        Telephone:  (202) 616-4203
        Christopher.Terranova@usdoj.gov

February 28, 2018