IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The United States of America, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 9:14-230-RMG |
| vs. ) | |
| ) | |
| BlueWave Healthcare Consultants, Inc.; ) | |
| Latonya Mallory, Floyd Calhoun Dent, III; ) | |
| and Robert Bradford Johnson, ) | |
| ) | **ORDER** |
| Defendants. ) | |
| ) | |

After the trial of this matter, Defendants informed the Court that one of the members of jury, Juror No. 118, had made postings on the social media site Facebook during the trial in violation of the Court's instructions to the jury panel. (Dkt. No. 880 at 32-34; 880-2 at 1-5). The Court entered an order on March 6, 2018 setting a hearing in this matter on March 21, 2018 and directing Juror No. 118 to appear and to produce all social media postings he made during the pendency of the trial and all social media and other communications he received relating in any manner to the trial prior to the jury's verdict on January 31, 2018. (Dkt. No. 882). Juror No. 118 appeared at the hearing of March 21, 2018 and provided the Court the requested documents. The Court now addresses the issue of whether Juror No. 118's conduct denied Defendants a fair trial.

Legal Standard

An attack on the validity of a jury verdict post trial on the basis of alleged juror misconduct is not favored, but there are circumstances where a juror's misconduct can be so

-1-

material and substantial that a party may be entitled to a new trial. Courts have distinguished between the situation where a juror may have violated an instruction of the trial judge, such as not to post on a social media site during the pendency of a trial, and the situation where a juror may have received extraneous prejudicial information or had outside influence brought to bear on him. *United States v. Fumo*, 655 F.3d 288, 305-06 (3d Cir. 2011); *Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992). Where there is evidence that a juror has been exposed to extrajudicial prejudicial information or had improper outside influence, the Court has the duty to inquire into the matter, there is a presumption of prejudice, and the burden is placed on the party seeking to preserve the verdict to prove the absence of prejudice. On the other hand, if there is no evidence of extrajudicial contact or influence, the party seeking to overturn a verdict on the basis of juror conduct must carry the burden of showing that the juror's actions denied him his constitutional right to a fair trial. *Drew*, 964 F. 2d at 415-16; *United States v. Villalobos*, 601 Fed. App'x. 274, 277 (5th Cir. 2015). As the Third Circuit observed in *United States v. Fumo*, while "prohibiting and admonishing jurors from commenting . . . about the trial on social networking websites and other internet mediums is the preferred and highly recommended practice, it does not follow that every failure of a juror to abide by the prohibition will result in a new trial." 655 F.3d at 305.

## Discussion

Juror No. 118 testified at the hearing of March 21, 2018 that the social media postings he produced (Court's Ex. No. 2) represented the entirety of his postings during the pendency of the trial. He further testified that beyond the limited numbers of comments he received in response to his social media postings, which did not deal with the substance of the trial, he had no contacts from any third parties. Thus, while Juror No. 118 certainly violated the Court's instructions

-2-

prohibiting social media postings during trial, there is no evidence that they resulted in any extrajudicial prejudicial information or outside influence on the juror.

The Court has carefully scrutinized the social media postings. They comment on some of the small details incident to jury service (free parking, refreshments, courtroom standing when the jury entered) and wry observations about the participants in the trial: government counsel ("a guy in a not at all expensive suit"), defense counsel ("a guy in really expensive clothes"), an expert witness ("a brilliant nerd in a wooden box"), and the judge ("a nice little old guy in a black dress"). Defendants have referenced the posting that "I don't know why its so funny when rich people fall down," as evidence of juror bias against their clients. A careful review of that posting reveals that the juror was referencing a defense attorney, who he described as "a really rich guy in expensive clothes."

Defendants requested that the Court make inquiry into the Juror No. 118's medication regime, alcohol consumption at lunch during trial, and details of a Uno card game, all referenced in the social media postings. The Court declined to make these inquiries as invading the juror's mental processes and deliberations, strictly prohibited by Federal Rule of Evidence Rule 606(b)(1). The Court observed Juror No. 118 during the entirety of the trial and detected no suggestion of impairment or inattention, and no party raised any objection regarding the conduct of jurors before a verdict was returned. Indeed, the parties and the Court praised the jurors for their close attention throughout the trial of the case. The Court found no suggestion from the social media postings of Juror No. 118 of disqualifying bias.

Based upon the foregoing, the Court finds that while Juror No. 118 violated the Court's instructions prohibiting social media postings, there is no evidence that such conduct by the juror

denied Defendants a fair trial. The Court denies Defendants' motion for a new trial on the basis of juror misconduct.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

March 21, 2018
Charleston, South Carolina