**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| United States of America, *et al.*, ) | Civil Action No. 9:14-cv-00230-RMG |
| ) | (Consolidated with 9:11-cv-1593-RMG |
| Plaintiffs, ) | and 9:15-cv-2458-RMG) |
| ) | |
| *ex rel.* Scarlett Lutz, *et al.*, ) | |
| ) | |
| Plaintiffs-Relators, ) | |
| ) | |
| v. ) | |
| ) | |
| BlueWave Healthcare Consultants, Inc., ) | |
| Floyd Calhoun Dent, III, Robert Bradford ) | |
| Johnson, and Latonya Mallory, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the United States' Motion for Entry of Judgment under Rule 54(b) of the Federal Rules of Civil Procedure asking this Court to (a) enter judgment for the United States on Counts I–III of its Complaint in the amount of $111,872,273 against Defendants Floyd Calhoun Dent, III, Robert Bradford Johnson, and Latonya Mallory, and in the additional amount of $3,136,305 against Defendants Dent and Johnson.[1] The motion is granted in part subject to findings below regarding treble damages, set-offs, and statutory penalties.

**I.   Background**

On January 31, 2018, a twelve-member jury returned a unanimous verdict, finding that defendants violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33. (Dkt. No. 870.) The jury found Johnson, Dent, and Mallory responsible for 35,074 false claims for services by Health

---

[1] This Order also addresses the parties' arguments about the sufficiency of the evidence with respect to damages. Several of these issues were first raised in the parties' briefings on Defendants' motions for judgment as a matter of law and/or for a new trial. (Dkt. Nos. 878, 880, 887, 891, 899.)

Diagnostics Laboratories ("HDL"), for which Medicare and TRICARE paid $16,601,591. (*Id.* at 1–2.) The jury also found Dent and Johnson responsible for 3,813 false claims for services by Singulex, for which Medicare and TRICARE paid $467,935. (*Id.* at 2–3.)

## II.  Discussion

### A.  Sufficiency of the Evidence – Damages

Dent and Johnson argue that there was not sufficient evidence in the record for the jury to find them liable for any damages all:

> In this case, there has never been a determination that the United States (or anyone else for that matter) sustained any actual harm because of Defendants Dent's or Johnson's alleged violations of the False Claims Act or Anti-Kickback Statute. To the contrary, the jury only determined the total number and value of claims as to which Defendants Dent and Johnson violated those statutes. The government did not show (and the jury did not determine) whether the government (or patients on whose behalf it was paying) received what it paid for with regard to the identified claims. . . . The United States has not shown that the laboratories did not perform the work for which they were paid. The United States has not shown that any of the tests involved in the 38,887 claims were not medically necessary.

(Dkt. No. 888 at 14.) The Court has already ruled several times on Defendants' theory, which is essentially a re-packaged version of their argument that the Government was not damaged if the tests that were ordered were actually performed. Defendants ignore the substantial evidence in the record that their actions caused unnecessary tests to be ordered and reimbursed by Medicare, discussed at length in this Court's May 14, 2018 Order. (Dkt. No. 906 at 11–12.) Defendants' argument also ignores this Court's prior order on materiality, finding that whether a test is medically unnecessary or violates the Anti-Kickback Statute ("AKS") is, as a matter of law, material to the Government's decision to reimburse a claim. (Dkt. No. 795 at 35); *see United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 386–87 (4th Cir. 2015) ("By reimbursing [defendant] for services that it was legally prohibited from paying [under the Stark Law], the

government has suffered injury equivalent to the full amount of the payments."). It bears repeating here that AKS violations are not technical violations of unnecessarily strict regulatory requirements, like the oft-discussed example of a Medicare requirement that a contractor use only American-made staplers. Claims that were induced by violations of the Anti-Kickback Statute are serious, so serious that the Government often punishes them criminally, as discussed at length in this Court's December 4, 2017 Order. (Dkt. No. 795 at 4–5.) The Court will not further explain why patients, the Medicare program, and, in turn, American taxpayers, are damaged by the performance of (and reimbursement of claims for) medically unnecessary testing.

Defendant Mallory argues that there was not sufficient evidence in the record to support the jury's verdict finding her liable for 35,074 false claims valued at $16,601,591. (Dkt. No. 878-1 at 1–7.) Mallory argues (1) that the jury's verdict cannot be accurate because it was based on aggregate damages figures for HDL and Singulex, and (2) that the jury incorrectly began measuring damages from a date on which Johnson received a communication from attorney Lauren DeMoss, a date Mallory argues is not relevant to her liability because she did not receive the communication. (Dkt. N. 878-1.)

Pursuant to Federal Rule of Civil Procedure 50(b), a party is entitled to judgment as a matter of law notwithstanding a jury verdict if the Court "determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir. 1999); *see also Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985) (judgment in favor of movant is appropriate where there is not "substantial evidence in the record to support the jury's findings."). The evidence must be viewed in the light most favorable to the non-moving party, but a mere "scintilla" of evidence is not enough; the plaintiff must "adduce

substantial evidence in support of [its] claim." *Demaine v. Bank One, Akron*, 904 F.2d 219, 220 (4th Cir. 1990).

While a jury "may not render a verdict based on speculation or guesswork," a jury is "allowed to act upon probable and inferential, as well as direct and positive proof" and "may make a just and reasonable estimate of the damage based on relevant data." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264–66 (1946); *accord Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 201 (4th Cir. 2017) ("[E]stimates that lack mathematical certainty are permissible so long as the [factfinder] has a basis to make a responsible estimate of damages."). "A district court abuses its discretion by upholding an award of damages only when the jury's verdict is against the weight of the evidence or based on evidence which is false." *Gregg v. Ham*, 678 F.3d 333, 343 (4th Cir. 2012). "A jury's award of damages stands unless it is grossly excessive or shocking to the conscience." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001).

Here, the jury had sufficient evidence to support its verdict that Mallory was liable for 35,074 false claims valued at $16,601,591. The Government's forensic accounting expert, Eric Hines, gave thorough testimony about the following damages calculations: (1) quarterly figures for the number and value of the claims HDL and Singulex submitted during the relevant period that were induced by kickbacks (Dkt. No. 836 at 166:1–170:12; 198:10–15; Dkt. No. 859 at 2674:15– 2675:4); (2) the number and value of the claims submitted by HDL and Singulex on a quarterly basis from 2010 and 2014 that were connected to the process and handling ("P&H") and commission kickback schemes (Dkt. No. 836 at 193:13–197:13, 197:14–198:9, 198:16–23; Dkt. No. 859 at 2675:5–2676:2); (3) the percentage of false claims related to the P&H kickback scheme broken down between HDL and Singulex (Dkt. No. 859 at 2674:8–2677:7) and related to both the P&H and commission kickback schemes (*id.*); (4) specific tests on test panels offered by

Singulex and HDL that were not medically necessary (Dkt. No. 857 at 1957–1971); (5) testimony that between 15 and 20 percent of all physician orders of HDL tests were for the "standard panel" (Dkt. No. 857 at 2049:2–20 and (6) several data points of the observed decline in HDL and Singulex test orders from physicians after the P&H fee practice ceased (Dkt. No. 836 at 178 (testimony from Eric Hines that test orders dropped "approximately 40 percent"); Dkt. No. 837 at 402:12–15 (testimony from BlueWave sales representative Jeffrey Cornwell that sales in Texas declined 15 to 20 percent after the P&H practice was terminated); Dkt. No. 838 at 612:4–14 (testimony from sales representative Larry Paul Mincey, Jr. that sales dropped by about 10 percent); Dkt. No. 855 at 1636 (testimony from Defendant Dent that sales dropped by (at "the highest") 11 percent)).

Mallory argues that the jury did not have sufficient evidence to render an accurate verdict as to her liability because the United States' damages expert, Eric Hines, provided aggregate figures for damages caused by HDL and Singulex claims. (Dkt. No. 878-1 at 1–7.) Mallory takes issue primarily with Mr. Hines's testimony on the first day of trial that he was not asked to apportion liability directly to any Defendant. (Dkt. No. 836 at 223.) Mallory argues in her briefs that this statement is proof that Mr. Hines attributed Singulex false claims to her and that the jury, in turn, miscalculated her liability. (Dkt. No. 878-1 at 4.) This argument has no merit. Mr. Hines testified explicitly on the first day of trial that he provided schedules breaking down the false claims between HDL and Singulex. (Dkt. No. 836 at 223.) On Day Ten of the trial, Mr. Hines broke down the total number and value of HDL claims and Singulex claims associated with the process and handling payments and the commission payments. (Dkt. No. 859 at 244-250.) He also provided an overall ratio of HDL to Singulex claims (*Id.* at 250.) Mr. Hines testified that those ratios were generally consistent and would be accurate if applied to the

quarterly figures he gave for damages on the first day of the trial. (*Id.*) It is undisputed that Mallory's role rendered her liable for false claims submitted by HDL but not Singulex. The jury had sufficient information to find Mallory liable for the HDL claims that Hines determined were made during the relevant time period and in violation of the False Claims Act. The jury's verdict as to Mallory is therefore not against the weight of the evidence.

Mallory also argues that the jury's verdict must be incorrect as to her liability because the "jury's calculation is based on a triggering date of November 14, 2013" (Dkt. No. 878-1 at 6), the same date that Defendant Johnson received in an email from attorney DeMoss. Mallory argues that the jury incorrectly used the same date to determine when she became liable for false claims, even though she did not receive or otherwise have knowledge of this email. (See Dkt. No. 878-1 at 6-7.) Mallory's argument is rife with speculation about how the jury ultimately determined the total number and value of claims for which each Defendant was or was not liable. She states that the jury "seemingly added one-half of the fourth quarter of 2013 claims (or 9,498) to the claims from the first and second quarters of 2014, to obtain the total number of claims that were found in violation of the FCA." (Dkt. No. 878-1 at 3.) Mallory's theory may well be a correct assessment of the jury's analysis, but this Court will not engage in an in-depth inquiry into the jury's deliberations because doing so "would be replete with dangerous consequences." *McDonald v. Pless*, 238 U.S. 264, 266–67, 269 (1915) (affirming judgment despite allegation that jury "adopted an arbitrary and unjust method" in arriving at "quotient verdict"). For reasons stated in this Court's May 14, 2017 Orders (Dkt. Nos. 907, 907), there is sufficient evidence in the record to support the jury's verdict finding Mallory liable for certain claims submitted by HDL. Additionally, there is sufficient evidence in the record (discussed just above) to allow the jury to "make a just and reasonable estimate of the damage," *Bigelow*, 327 U.S. at 264, caused

by those claims. For these reasons, the jury's award "was not reached against the clear weight of the evidence, and would not result in a miscarriage of justice." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 201 (4th Cir. 2017).

### III. Treble Damages

The Government has asked the Court to treble the total value of the false claims for which the jury found Defendants liable as required under Title 31, United States Code, Section 3729(a)(1). *See Fresenius Med. Care Holdings, Inc. v. United States*, Civ. A. No. 08-12118-DPW, 2013 WL 1946216, at *6 (D. Mass. May 9, 2013) ("[T]he government need only prove its single damages, after which multiple damages are applied as a matter of course."). In accordance with the False Claims Act, the Court hereby trebles the single damages as determined by the jury: Dent, Johnson, and Mallory are jointly and severally liable for treble damages of $49,804,773 for the false claims submitted by HDL. Additionally, Dent and Johnson are jointly and severally liable for treble damages of $1,403,805 for the false claims submitted by Singulex.[2]

### IV. Set-Offs

"[W]hen a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *See Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989); *Peterson v. Air*

---

[2] Dent, Johnson, and Mallory are jointly and severally liable for the treble damages and penalties for the HDL claims, and Dent and Johnson are jointly and severally liable for the treble damages and penalties for the Singulex claims. *See Mortgages, Inc. v. U.S. Dist. Ct. for the Dist. of Nev.*, 934 F.2d 209, 212 (9th Cir. 1991) ("Where one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty."); *accord United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885, at *4 (D.S.C. May 23, 2002) (collecting cases).

*Line Pilots Ass'n*, 622 F. Supp. 232, 237 (M.D.N.C. 1985); *accord Rutland v. South Carolina Dep't of Transp.*, 734 S.E.2d 142, 145 (S.C 2012) ("[I]t is almost universally held that there can be only one satisfaction for an injury or wrong.") (quotation marks and citation omitted).

The parties do not dispute that all three Defendants are entitled to a set-off for the amounts the United States has received from its settlements with HDL and Singulex. However, Defendants are only entitled to a set-off for those amounts "previously received" by the United States that are attributable to common damages. *See United States v. Bornstein*, 423 U.S. 303, 316 (1976); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 501 F. Supp. 2d 51, 53 (D.D.C. 2007).

As of the parties' briefings on these issues, the United States had received $6,355,147.48 from HDL and $972,984.41 from Singulex pursuant to their settlements of FCA allegations. (Dkt. No. 887-2.) The United States argues that because neither HDL nor Singulex was a Defendant in this case, and because HDL and Singulex both settled allegations of broader misconduct[3] than the United States alleged against Dent, Johnson, and Mallory, only a portion of these settlements can be regarded as "common" to the damages Dent, Johnson, and Mallory are liable for here. While HDL settled with the United States to resolve allegations concerning 289,818 allegedly false claims, Mallory, Dent, and Johnson were found liable for only 35,074 (12%). Likewise, while Singulex settled with the United States to resolve allegations about 38,138 allegedly false claims, Dent and Johnson were found liable here for only 3,813 (10%). The United States therefore argues that Dent, Johnson, and Mallory are entitled to apply 12% of

---

[3] HDL settled allegations including offering and paying kickbacks in "speaker programs; advisory boards; consulting arrangements; goods and services; and gifts" and submitting claims for payment for tests "that were not appropriately coded." (Dkt. No. 588-1 ¶¶ (D)(1),(3).) Singulex settled allegations in connection with offering and paying kickbacks in "speaker and other consulting fees." (Dkt. No. 588-2 ¶ (D)(1).)

HDL's settlement payments as a set-off to the verdict against them and that Dent and Johnson are entitled to apply 10% of Singulex's settlement payments as a set-off to the verdict against them. The Court agrees and finds that Dent, Johnson, and Mallory are entitled to a set-off of 12% of the amount the United States has already received from HDL (*i.e.*, $762,617.70) for the HDL claims. Dent and Johnson are entitled to a set-off of 10% of the amount the United States has already received from Singulex (*i.e.*, $97,298.44) for the Singulex claims. This set-off is applied to the already trebled damages discussed above. *See Bornstein*, 423 U.S. at 316–17 ("in computing the [multiple] damages authorized by the [FCA], the Government's actual damages are to be [multiplied] before any subtractions are made for compensatory payments previously received by the Government from any source."); *see also Bill Harbert*, 501 F. Supp. 2d at 54 n.4 (approving this approach even under the new treble damages provision).

Defendants argue that they are entitled to additional set-offs. (Dkt. No. 880-1 at 50; 878-1 at 21.) For example, they argue that because HDL's trustee waived the attorney-client privilege as to certain documents demanded by the government in exchange for the Government's release of $53,500,000.02 in claims against the estate, they are entitled to a damages set-off of that amount. Defendants' assertion that the Government somehow received the value of $53,500,000.02 when it released future claims against the bankruptcy estate valued at that amount in exchange for a limited privilege waiver is not compelling. In any event, neither this agreement nor the pre-petition claim cited by Defendants (Dkt. Nos. 880-9; 878-2) represents payment received by the United States in connection with common damages because the agreements did not settle FCA claims.

Defendants also claim that they are entitled to a set-offs for any amounts the United States has received from physician practices, but they cite no physician or physician practice

who settled FCA claims related to the receipt of P&H fees from HDL or Singulex. Defendants have also not identified any settlement reached between the United States and HDL's former owners that could form the basis for an additional set-off.

Defendants claim that they are entitled to an equitable lien on future payments made by HDL that represent common damages. *See Mills v. GAF Corp.*, 20 F.3d 678, 682 (6th Cir. 1994) (holding that the non-settling defendant is entitled to an equitable lien on any future payments to the plaintiff from a settling defendant). The Sixth Circuit stated in *Mills*, however, that "Carey Canada must pay the full amount of the verdict and will receive a lien on any future payments to the plaintiffs under the settlement agreements." *Id.* at 682. For this reason, the judgment in this action is not presently reduced by any liens. As already stated, the Government cannot recover twice for common damages among HDL, Singulex, and these Defendants.

## V. Civil Statutory Penalties

FCA liability "triggers the imposition of civil penalties." *United States v. Karron*, 750 F. Supp. 2d 480, 493 (S.D.N.Y. 2011). Individuals found liable for claims submitted between 2010 and 2014 are subject to "civil penalties amounting to a minimum of $5,500 and a maximum of $11,000." *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 401 n.10 (4th Cir. 2013); *see also Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 123 n.1 (2003) ("The [FCA] penalty is currently $5,500 to $11,000.") (citing Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, § 5; 28 U.S.C. § 2461 note); 64 Fed. Reg. 47099, 47103–04 (1999).

The United States seeks to impose the minimum FCA penalty ($5,000) for each of 11,285 HDL claims and 315 Singulex claims for which the jury found Defendants liable, resulting in

total civil penalties of $62,067,500 for the HDL claims and $1,732,500 for the Singulex claims.[4] Imposing the requested civil penalties would result in the following judgment:

|  | **Treble Damages** | **Less Set-Off** | **Civil Penalties** | **Total** |
| --- | --- | --- | --- | --- |
| **Singulex Claims (Dent and Johnson)** | $1,403,805 | ($97,298.44) | $1,732,500 | $3,039,006.56 |
| **HDL Claims (Dent, Johnson, and Mallory)** | $49,804,773 | ($762,617.70) | $62,067,500 | $ 111,109,655.3 |

Defendants argue that imposition of these judgments against them would violate the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment. Many courts have rejected the notion that the Eighth Amendment limits the potential recovery in False Claims Act cases. See *Hudson v. United States*, 522 U.S. 93, 104 (1997) ("money penalties" have not "historically been viewed as punishment"); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) ("It is far from clear that the Excessive Fines Clause applies to civil actions under the False Claims Act."); *Karron*, 750 F. Supp. 2d at 493 n.12 ("It is well-settled that punitive damages do not constitute 'fines' for the purpose of an Eighth Amendment analysis"). Even if the Excessive Fines Clause is applicable to civil FCA judgments, the judgment here passes Constitutional muster. Under the Eighth Amendment, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," to which "substantial deference" is accorded. *United States v. Bajakajian,* 524 U.S. 321, 336, (1998). As the Fourth Circuit recently reiterated:

---

[4] The United States could seek penalties for 38,887 false claims for a total of between $213,878,500 and $427,757,000 but has discretion under the FCA "to accept reduced penalties." *Bunk*, 741 F.3d at 408; *see also United States v. Mackby*, 339 F.3d 1013, 1015 (9th Cir. 2003) (upholding penalties sought by United States on 111 of 1459 false claims).

> No proof is required to convince one that to the Government a false claim, successful or not, is always costly. Just as surely, against this loss the Government may protect itself, though the damage be not explicitly or nicely ascertainable. The FCA seeks to reimburse the Government for just such losses. For a single false claim, the civil penalty would not seem exorbitant. Furthermore, even when multiplied by a plurality of impostures, it still would not appear unreasonable when balanced against the expense of the constant Treasury vigil they necessitate.

*Bunk*, 741 F.3d at 409 (quoting *Toepleman v. United States*, 263 F.2d 697, 699 (4th Cir. 1959) (brackets omitted)). For reasons discussed in this Court's order on materiality (Dkt. No. 795 at 4–5) and earlier in this order, the jury found Defendants liable for serious violations of the law. In light of the seriousness of these alleged violations, the fact that there is a "substantial difference" between the civil penalties the jury verdict would support and the damages the United States actually seeks "weighs against a finding of gross disproportionality." *Mackby*, 339 F.3d at 1018. The Fourth Circuit has determined that the "instances in which the penalty prescribed under the FCA is unconstitutionally excessive will be 'infrequent'" *Tuomey*, 792 F.3d at 387 (quoting *Bunk*, 741 F.3d at 408).

Defendants have also raised Fifth Amendment objections to the Government's requested judgment. "[T]he Due Process Clause imposes limits on 'grossly excessive' monetary penalties that go beyond what is necessary to vindicate the government's 'legitimate interests in punishment and deterrence.'" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996)). The Fourth Circuit has stated that it has "no reason to believe" that the "approach to punitive damages under the Fifth Amendment would differ dramatically from analysis under the Excessive Fines Clause." *Tuomey*, 792 F.3d at 388.

"The Supreme Court has instructed courts to consider three guideposts when reviewing punitive damages awards under the Due Process Clause: '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the

plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.'" *Tuomey*, 792 F.3d 364, 388 (4th Cir. 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, (2003)).[5]

In *Tuomey*, the Fourth Circuit indicated that the Stark Law "expresses Congress's judgment of the reprehensibility of the conduct at issue by deeming services provided in violation of the law worthless." *Tuomey*, 792 F.3d at 388. The same is true of Anti-Kickback Statute violations. In addition, Defendants' conduct "involved repeated actions" and was not the result of a "mere accident," two factors that inform the reprehensibility of Defendants' conduct and support substantial punitive damages. *See State Farm*, 538 U.S. at 419; *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 153 (4th Cir. 2008) (finding the presence of only a single *State Farm* factor sufficient to "provide justification for a substantial award of punitive damages").

The ratio of punitive to compensatory damages in this verdict is constitutionally sound. The Due Process clause "does not apply to compensatory damages because compensatory damages are intended to directly redress Plaintiff's injury and that injury is factual determination already made by the jury. *Id*. at 387. The Supreme Court has noted that because "some amount of money beyond actual damages is 'necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims'" there is a compensatory aspect to treble damages. *Tuomey*, 792 F.3d at 388 (quoting *Cook Cnty.*, 538 U.S. at 130. The treble damages provision also allows the Government to be compensated for the award it must pay to compensate relators in qui tam actions, *id*., between 15 percent and 25 percent "of the

---

[5] The jury did not have discretion to award punitive damages in this case, so this factor is not dispositive here.

proceeds of the action or settlement of the claim." 31 U.S.C. § 3730(d). The civil penalties imposed in FCA cases are entirely punitive. *See Mackby*, 261 F.3d at 830. The Supreme Court indicated in *State Farm* that a 4-to-1 ratio of punitive to compensatory damages "might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425.

This Court has applied the same analysis the Fourth Circuit used in *Tuomey* and determined that the compensatory damages in this case is comprised of a 15% relators' share of the total recovery and one-third of the trebled damages (i.e., single damages). The remainder of the damages (two-thirds of the treble damages and all of the civil penalties) are punitive. *See Tuomey*, 792 F.3d at 389 (applying this calculation and determining that the ratio of punitive to compensatory damage, was about 3.6-to-1, was constitutional).

For the Singulex claims, Dent and Johnson are each liable for $938,380.75 in compensatory damages comprised of single damages ($467,935) combined with the relator's share (15%) of the total recovery ($470,445.75).[6] The remainder of the total recovery, $2,197,924.25, is punitive damages. The ratio of punitive to compensatory damages for the Singulex claims is 2.3-to-1. For the HDL claims, Dent, Johnson, and Mallory are each liable for $33,382,431.95 in compensatory damages comprised of single damages ($16,601,591.) combined with the relators' share (15%) of the total recovery ($16,780,840.95). The remainder of the total recovery, $78,489,841.05, is punitive. The ratio of punitive to compensatory damages for the HDL claims is 2.35-to-1. The ratio of punitive to compensatory damages for the HDL and Singulex claims in this judgment is therefore well below the 4-to-1 ratio that raises constitutional concerns under the Due Process clause.

---

[6] The set-offs discussed earlier in this order are not relevant to whether the punitive damages in the judgment are constitutional. For this reason, the Court has not incorporated any set-off into the calculation of the total recovery.

## VI. COMMON LAW CLAIMS

The United States also asks the Court to sever the remaining causes of action, including the common law causes of action in Counts IV (payment by mistake of fact) and V (unjust enrichment) of the United States' Complaint. (Dkt. No. 75). The Government argues that because there is a higher scienter requirement for AKS/FCA claims than there is for the common law causes of action, the jury's finding that defendants were only liable for a subset of the allegedly false claims has no binding or preclusive effect on the litigation of the common law causes of action. *See* 31 U.S.C. 3729(b)(1) (defining "knowingly" for purposes of FCA). "[C]ommon law actions are available to the government to supplement those remedies found in federal statutes, as long as the statute does not expressly abrogate those rights." *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 667 (4th Cir. 1996). While the Government may not recover twice for the same claims, it may pursue "consistent remedies, even to final adjudication." *See, e.g.*, *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Pine Bluff*, 354 F.3d 945, 950–51 (8th Cir. 2004).

With this Order, the Court is entering Rule 54(b) judgment on the Government's FCA causes of action. The common law causes of action are severed and held in abeyance. If this judgment is affirmed on appeal, or otherwise becomes final, then the common law causes of action could be dismissed. *See U.S. ex. rel. Drakeford v. Tuomey*, 976 F. Supp. 2d 776, 791–92, 794 (D.S.C. 2013) (denying without prejudice Tuomey's motion to require election of remedies after the Government prevailed on its FCA claims).

## VII. Waiver of Copayments and Deductibles

All Defendants have moved for judgment as a matter of law on the Government's FCA claims based on the waiver of copayments and deductibles. The Government has not objected to that judgment and indeed did not present any evidence at trial from which the jury could assess

damages that resulted from this practice (or even find that the practice violated the FCA). For this reason, Defendants are entitled to judgment as a matter of law with respect to the Government's claims based on the waiver of co-payments and deductibles.

## VIII. Conclusion

For the reasons set forth above, the Court hereby enters judgment against Defendants Mallory, Dent and Johnson for $111,109,655.30 for the HDL claims and against Dent and Johnson for $3,039,006.56 for the Singulex claims.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

May 23, 2018
Charleston, South Carolina