# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| The United States of America, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 9:14-0230-RMG |
| vs. | ) |
| | ) **ORDER AND OPINION** |
| BlueWave Healthcare Consultants, Inc., *et al*. | ) |
| Defendants. | ) |

Before the Court is the United States of America's memorandum in support of enforcing its writs of execution on bank accounts held in the names of Defendant Floyd Calhoun Dent III's adult children, Hunter Dent and Hailey Dent (Dkt. No. 1143), and Hunter and Hailey Dent's motion to quash the writs of execution (Dkt. No. 1145). The Court conducted an evidentiary hearing on October 20, 2021. For the reasons set forth below, Hunter Dent's and Hailey Dent's motion to quash is denied.

**I.     Background**

In January 2018, following a twelve-day trial, a jury unanimously found Floyd Calhoun Dent III liable for multiple violations of the False Claims Act (FCA), 31 U.S.C. § 3729. The jury assessed actual damages in excess of $16 million and, after trebling damages and adding civil penalties pursuant to the FCA, the Court entered judgment against Dent for a total of $114,148,661.86.

The Government filed for writs of execution on bank accounts in which Dent had a substantial and nonexempt interest, which the Court granted. Dent and members of his family moved to stay and quash the writs of execution. After extensive Court-ordered discovery into Dent's assets, the Court granted Dent a partial stay of execution on the judgment, pending his

1

appeal of the judgment to the Court of Appeals for the Fourth Circuit, subject to Dent posting a $30,000,000 less-than-full supersedeas bond. To preserve the status quo and secure the bond, the Court required Dent to deposit into the court registry the contents of several bank accounts in which the Court found Dent had a substantial and nonexempt interest.

Included among the bank accounts were three accounts, purportedly created under the South Carolina Uniform Gift to Minors Act (UGMA), in the names of Dent's three children, adult Hailey, adult Hunter, and "Minor L.D." The Dent Children moved to exclude the accounts from Dent's assets subject to the bond, arguing that the Government's writs of execution were overbroad, that the funds in the accounts belonged to them, and thus that Dent lacked a substantial and nonexempt interest in the funds. The writs remained stayed pending Dent's appeal of the judgment, and the Court directed the parties to brief the issue of the Children's accounts[1] on cross motions for summary judgment. On review of that limited record, the Court awarded summary judgment to the Government, finding there was no dispute of material fact that Dent had a substantial nonexempt interest in the accounts in Hailey's and Hunter's names and, therefore, ordered those funds to be held in the court registry to partially secure Dent's appeal bond. The Court declined to find that Dent had a substantial nonexempt interest in the account in Minor L.D.'s name, based on the record before it, and instead appointed Colonial Trust as successor custodian to the account in light of Dent and his interested-non-party wife's clear conflicts of interest. (Dkt. No. 1027.)

---

[1] The phrase "Children's accounts" references that Dent opened the bank accounts in the child's name; it does not reference or indicate the child's ownership, possession or control over the account. Likewise, the phrase "UGMA account" references that, when Dent opened the account, he labeled it as purportedly under the UGMA; it does not reference that the account meets the requirements of the UGMA.

The Dent Children appealed. The Fourth Circuit dismissed their appeal, finding it lacked jurisdiction because this Court's order on summary judgment "determined only that the assets in the Dent children's accounts should be transferred to the court as part of Dent's supersedeas bond." *United States v. Dent*, 845 Fed. Appx. 220, 223, 2021 WL 613780 (4th Cir. Feb 17, 2021). In other words, this Court's order was not final and appealable because the Government had not sought, and therefore the Court had not made, a determination of the ultimate ownership of the Children's accounts, which the Government instead contended was more properly adjudicated following the resolution of Dent's appeal of the judgment.

Dent's appeal was resolved shortly thereafter, when the Fourth Circuit "affirm[ed] the judgment of the district court in all respects." *United States v. Mallory*, 988 F.3d 730, 735 (4th Cir. 2021). Dent petitioned for rehearing or rehearing *en banc*, which the Fourth Circuit denied and issued its final mandate. (Dkt. No. 1099.) In light of that resolution, the Government moved to modify the conditions of Dent's appeal bond so as to execute on the writs of attachment and collect judgment on the assets securing the bond. Dent and his family members opposed. After reviewing the parties' briefing, the Court granted the Government's request to execute on the cash in the court registry, "except for the UGMA accounts of the Dent Children[.]" (Dkt. No. 1106.) Deliberately parsing the accounts in the Children's names, the Court directed the Government to separately propose a limited discovery and briefing schedule on the issue of executing on the purported UGMA accounts in Hailey, Hunter and Minor L.D.'s names. (Dkt. No. 1107.) The parties conferred and the Court granted their proposal to conduct discovery on and brief whether Dent has a substantial nonexempt interest in the Children's accounts. (Dkt. No. 1113.) The parties engaged in discovery for several weeks, thoroughly briefed the issue, and

3

presented extensive documentary and testimonial evidence at a hearing conducted on October 20, 2021.

## II.     Legal Standard

The Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. § 3001 *et seq.*, is the Government's exclusive procedure to recover a judgment as a debt. "All property in which the judgment debtor has a substantial nonexempt interest shall be subject to levy pursuant to a writ of execution." 28 U.S.C. § 3203(a). "Levy on property pursuant to a writ of execution issued under this section shall be made in the same manner as levy on property is made pursuant to a writ of attachment issued under section 3102(d)." *Id.* § 3203(d). "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Reference to state law is moreover appropriate because the FDCPA was designed to create a uniform framework for the collection of federal debts from a patchwork of state laws governing collection procedure. *See, e.g.*, *United States v. Coluccio*, 842 F.Supp. 663, 666 (E.D.N.Y. 1994), *vacated on other grounds*, 51 F.3d 337 (2d Cir. 1995). "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).

"A writ of execution may be challenged by an individual or entity claiming an ownership interest in the property." *United States v. West Indies Transport Co., Inc.*, 57 F. Supp. 2d 198, 203 (D.V.I. 1999) (citing *Coluccio*, 842 F.Supp. at 665); *see also United States v. Cox*, No. 3:05-

cr-92-GCM, 2008 WL 2397615, at *2 (W.D.N.C. June 10, 2008). "In such a situation, the burden of proving ownership of the subject property is borne by the claimant, not the judgment creditor." *West Indies Transport Co., Inc.*, 57 F. Supp. 2d at 203.[2] At the October 20, 2021 evidentiary hearing, the Government and the Dent Children agreed that the claimant must prove ownership by a preponderance of the evidence. (Dkt. No. 1177 at 8.)

First, "[t]o prove ownership, the claimant must . . . provide some evidence of control." *West Indies Transport Co., Inc.*, 57 F. Supp. 2d at 203. "While ownership may be proven by actual possession, dominion, control, title and financial stake, the possession of bare legal title to the res may be insufficient, absent other evidence of control or dominion over the property." *United States v. One 1982 Porche 928*, 732 F.Supp. 447, 451 (S.D.N.Y. 1990). "Ultimately, the claimant must prove that its alleged title to the property is superior to the judgment creditor's right to execute judgment on the property." *West Indies Transport Co., Inc.*, 57 F. Supp. 2d at 203. But proving ownership "does not end the inquiry." *Coluccio*, 842 F.Supp. at 666. Next, the Court "must decide whether the [claimant] has a 'substantial . . . interest' in the property." *Id*. Courts have remarked that there are "no cases construing the terms 'property' or 'interest' within the meaning of the FDCPA." *Id*. But the legislative history of the FDCPA indicates that "'property' is defined broadly to encompass all present and future interests in real and personal property." H.R. Rep. No. 101-736, 101st Cong., 2d Sess. (1990).

Last, the claimant must demonstrate that his substantial ownership interest is exempt from judgment. Looking to South Carolina law pursuant to Rule 69, property is exempt from judgment where it is a gift to a child made during the donor's lifetime pursuant to the UGMA, S.C. Code Ann. § 63-5-500 *et seq.* A gift made under the UGMA "is irrevocable." *Id*. § 63-5-

---

[2] Here, even if the burden were on the judgment creditor, the evidentiary record plainly supports finding that Dent maintained a substantial nonexempt interest in the accounts at issue.

530(A). It "conveys to the minor indefeasibly vested legal title to the . . . money[.]" *Id*. Because the custodian makes a UGMA gift for the child's benefit, the custodian is charged with specific statutory responsibilities. Most significantly, and reflecting the obvious nature of a gift, "the custodian must deliver or pay over the custodial property to the minor on his attaining the age of twenty-one years." *Id*. § 63-5-540(D).

## III.     Discussion

At issue is whether Dent has a substantial nonexempt interest in the bank accounts that he opened in Hailey's and Hunter's names. If he does, the Government may execute on the funds to partially satisfy the judgment against Dent. If he does not, the Government's collection efforts cannot reach into the two purported UGMA accounts because those funds instead belong to the children. The Government and Dent Children rigorously litigated this question at the evidentiary hearing. Together, they presented twenty-seven exhibits comprising hundreds of pages, as well as testimony from five witnesses including Hailey, Hunter, and Dent. From this large record, a chronology of Dent's actions is instructive.

*1.     Dent Creates Wells Fargo Account # -6030 Purportedly as UGMA for Minor L.D.*

On or about February 11, 2011, Dent and his wife jointly open Wells Fargo Account # -6043 in their own names. Dent deposits $250,000 into this account. The source of the $250,000 is half of a check made out from BlueWave to Dent.

That same day, Dent opens another account, Wells Fargo Account # -6030. Dent names Account # -6030 "Floyd Calhoun Dent III Custodian Under SC UGMA." Dent associates the account with Minor L.D.'s Social Security number. Dent makes himself the sole signatory on the account. Dent then deposits $250,000. The source of the $250,000 is the other half of the check made from BlueWave to Dent.

2.   *Dent Creates Wells Fargo Account # -6043 Purportedly as UGMA in Hunter's Name.*

In March 2011, Dent transfers the previously opened joint Account # -6043, which contains $250,000, to instead be in the name of "Hunter Garrett Dent/Floyd Calhoun Dent III Custodian Under SC UGMA."  Dent associates this account with Hunter's Social Security number.  Dent makes himself the sole signatory on the account.

3.   *Dent Creates Wells Fargo Account # -6388 Purportedly as UGMA in Hailey's Name.*

On or about March 24, 2011, Dent opens Wells Fargo Account # -6388.  Dent names it "Hailey Shannon Dent/Floyd Calhoun Dent III Custodian Under SC UGMA."  Dent associates the account to Hailey's Social Security number.  Dent makes himself the sole signatory on the account.  The account has a zero balance.

4.   *Dent Twice Withdraws $125,000 from Hunter's Purported UGMA Account and Deposits it into Hailey's Purported UGMA Account.*

On March 24, 2011, the same day that Dent creates the account in Hailey's name, Dent withdraws $125,000 from Account # -6043 in Hunter's name.  Dent deposits the $125,000 into Account # -6388 in Hailey's name.

A few months later, in November 2012, Hunter turns eighteen years old.  Several days before Hunter's eighteenth birthday, Dent makes another withdrawal from the purported UGMA Account in Hunter's name.  Dent withdraws $125,832,44 from Account # -6043, leaving the account with a $25 balance.  Dent deposits that $125,832,44 into Account # -6388 in Hailey's name.

5.   *Dent Withdraws from Hailey's Purported UGMA Account.*

On or about September 2013, Wells Fargo Advisors deposits $18,317.35 into Account # -6388 in Hailey's name.  The deposit is made payable to Dent as Hailey's guardian.  Later, Dent makes two transfers out of the Account in Hailey's name and into a checking account in his own

name. These transfers are labeled as for tuition and education expense reimbursement. The Government is not challenging these two transfers. (Dkt. No. 1143 at 8.)

6. *Dent Fails to Deliver Control of the Purported UGMA Accounts to Hunter and Hailey When They Turn Twenty-One Years Old.*

Hunter turns twenty-one years old on December 9, 2015. Dent does not "deliver or pay over" Account # -6043 to Hunter. S.C. Code Ann. § 63-5-540(D). Hailey turns twenty-one years old on May 24, 2017. Dent does not deliver or pay over Account # -6388 to Hailey. Dent does not inform Hunter and Hailey of the accounts' existence, does not make Hunter and Hailey signatories on the accounts, and takes no other action to give them control over the accounts. Rather, Dent retains full control of the accounts after the children are twenty-one years old, until the accounts are moved to the court registry as security for Dent's own appeal bond.

7. *Dent Learns of the Government's Lawsuit and Donates or Transfers Assets.*

On April 9, 2015, the Court orders the docket unsealed in light of the Government's decision to intervene in part and decline to intervene in part. On September 16, 2015, the Government notices its waiver of service of the summons on Dent. Dent learns of the amended complaint and the Government's claims against him. In and after December 2015, Dent writes ten checks to charities totaling $546,000. In April 2015, Dent transfers $60,000 in gold coins to his sister.

8. *Hunter and Hailey Learn that Dent Created Accounts in their Names.*

At the evidentiary hearing on October 20, 2021, Hunter testified that while he had been generally aware that his father was saving money, Dent "never discussed accounts." (Dkt. No. 1177 at 30.) Instead, Hunter later "discovered when I was older"—"at 19 or 20 years old"—that Dent had previously withdrawn money from an account in Hunter's name and deposited those funds into an account in Hailey's name. (*Id*. at 42, 46.) But Hunter did not know he "had an

8

ownership right at age 21[.]" (*Id*. at 43.)  Hailey testified that she "did not know the funds that were in [the account] until 2019" because only "[o]nce we were told that we were sued, we were told what the funds were." (*Id*. at 61.)  It was in 2019, when Hailey was twenty-three years old, that she "first learned the specifics of the account," when Dent told her that "$125,000 was deposited into both mine and my brother's account apiece" and "that my brother's was put into my account[.]" (*Id*. at 61, 67.)  And it was only on October 20, 2021—over the course of questioning at the evidentiary hearing—when Hailey "figured that out today" that in 2011 Dent created the account in her name. (*Id*. at 62.)

These record facts demonstrate that Dent has a substantial nonexempt interest in these purported UGMA accounts.  As to Dent's dominion and control, Hunter confirmed that he has "no idea" who controlled the account because he wasn't specifically aware the account existed. (*Id*. at 35.)  Hailey, when asked, "did your father have control of this account?" testified, "Yes" and confirmed it "was [her] understanding [her] dad controlled the money." (*Id*. at 63, 73.)  As to their own complete lack of dominion and control over the accounts, Hunter testified, "No, I didn't have control over the account" and that "[i]f I did have control of it, I wasn't aware of it." (*Id*. at 35, 44.)  Hailey likewise testified that she "never controlled that money herself" and "after [she] turned 21, [she] never controlled the money." (*Id*. at 73, 75.)  This understanding aligns with the facts: as the children testified, they did not know when the accounts were opened, did not know the initial deposit amount, did not know the initial deposit source, did not know of subsequent deposits, did not know who managed the investment strategy, did not know what the investment strategy was, never spoke to a banker about the accounts, never provided the bank with their contact information, and never saw account statements.  The children did not know if they were signatories or generally what a signatory is.  Dent, by contrast, made himself the sole

9

signatory on each account. And he retained and exercised control over the accounts until they were placed in the court registry to secure his appeal bond.

Significantly, as he previously affirmed in a sworn statement, it is undisputed that Dent did not transfer the accounts to Hunter and Hailey when they turned twenty-one years old. (Dkt. No. 1014-1.) And Hunter and Hailey corroborate this. When asked, "Did your father turn over the account to you on your 21st birthday?" Hunter testified, "No." (Dkt. No. 1177 at 37.) When asked, "Did your father turn over the account to you on your 21st birthday?" Hailey responded, "He did not" and "He has not" since. (*Id*. at 65.) Instead, despite the UGMA's clear mandate, Dent exercised his own discretion to retain control of the funds after his children turned twenty-one years old. As Hunter testified, "whenever he thought it was appropriate and I was ready to have that money is when I would have had that money." (Dkt. No. 1177 at 43.)

Dent's retention of control subject to his own discretion is a clear violation of the statutory requirement that the custodian relinquish the supposedly irrevocable gift. Dent offers excuses for his failure to tender control, but the excuses fall short because the UGMA makes no provision for custodial discretion and they are contradicted by the record. For instance, Dent asserts that he exercised his discretion to twice withdraw funds from Hunter's account for what Dent deemed "safekeeping" in light of Hunter's then-addiction. (Dkt. No. 1014-1.) But this exercise of discretion, to claw back a purported gift to Hunter and transfer it to another third-party, goes to show that Dent never tendered control and the gift was not irrevocable. Dent also asserts that he exercised his discretion to maintain control over both accounts despite the children turning twenty-one years old in order to avoid scrutiny "because of the ongoing litigation." (*Id.*) But he nevertheless found it prudent to make transfers and gifts to other third-parties in 2015.

10

Equally demonstrative of Dent's ownership in and control over the accounts, and the fact that they are nonexempt, is Dent's March 2011 and November 2012 withdrawals of $125,000 out of Hunter's purported UGMA Account. Dent's assertion that he was safeguarding the funds from Hunter again demonstrates that they were not irrevocably gifted to Hunter at all. Instead, Dent exercised his own opinion, even if he believed it in the best interest of the child, to wait and see when he considered Hunter fit to receive control of what had already purportedly been gifted to him. When Hunter turned twenty-one years old a year or two later, Dent again refused to relinquish what he had supposedly already gifted to his son. This is entirely inconsistent with the gravamen of a UGMA gift: that it is irrevocable. Instead, the totality of Dent's acts demonstrates that there was no such irrevocable transfer to Hunter and Hailey and, therefore, that the accounts purportedly created as gifts are not in fact exempt under the UGMA.

The UGMA is a discrete statutory vehicle. It allows a "donor" to create "a gift" to a minor. S.C. Code Ann. § 63-5-520(A). For this, the donor is rewarded with certain benefits: he keeps the funds out of reach of his own taxers and creditors. The "donor" becomes a "custodian," and the money is mere "custodial property" that he must "manage . . . for the minor's benefit." *Id*. §§ 63-5-530(A), 540(A). Avoiding taxers and creditors is a significant benefit that may incentivize a custodian to create a UGMA account. What, then, is to deter a custodian from simply depositing money into an account labeled as opened under the UGMA, reaping the benefits of shielding that money from taxers and creditors, only to maintain control of funds that were purportedly irrevocably gifted to a child? The statute provides a definitive answer: the custodian "must deliver" the money to the child when he or she is twenty-one years old. *Id*. § 63-5-540(D). That is the essence of a gift under the UGMA: it is "irrevocable." *Id*. § 63-5-530(A). It follows that transferring the money away from the child, because the custodian

11

deems the child unsuitable to receive the purported gift, is antithetical to the custodian's duty to grant an irrevocable gift.  It further follows that failing to deliver the money at all upon the child attaining the age of twenty-one, and thereafter maintaining control over the money, and further demonstrates that the funds were never irrevocably gifted to Hunter and Hailey.

The custodian cannot validly invoke the benefits of the UGMA simply by opening an account labeled with the language, "under the Uniform Gift to Minors Act." *Id*. § 63-5-520(A)(2).   Instead, the custodian must take action to satisfy the statute's clear requirements of an irrevocable gift: manage the money to the child's benefit and then tender the money to the child on a date certain.  Dent's conduct evidences that this money was never irrevocably gifted to his children.  Dent opened the accounts, deposited a check from BlueWave, and labeled the accounts with the language proscribed by the UGMA.  For years, he then reaped the statutory benefits bestowed on a purported custodian, housing what had been a check from BlueWave away from reach of his creditors.  In exchange for that, Dent was statutorily required to manage the money as a mere custodian for his children's benefit.  But Dent never even told the children that the accounts existed.  Instead, he withdrew money with the intent of keeping it out of Hunter's reach and held tight to control over the money long after the children were twenty-one years old.  Dent's acts are antithetical to and in violation of the statute's clear requirements for an account to qualify as a "gift" under the UGMA.  Indeed, no such gift to the children's control ever occurred.  Dent's conduct instead demonstrates both his steadfast dominion and control over the money and that it was not an "irrevocable" gift to his children.

The Court finds that Dent has a substantial nonexempt interest in Wells Fargo Account # -6043 in Hunter's name and Wells Fargo Account # -6388 in Hailey's name.  As a result, the Court finds that the funds in these accounts are subject to the Government's writs of execution to

partially satisfy the affirmed judgment against Dent. As to Minor L.D., the Government requests that Colonial Trust remain successor custodian of the account in this minor child's name. Having heard from the parties on this matter at the October 20, 2021 hearing and after careful review, the Court holds that Colonial Trust shall remain successor custodian of Wells Fargo Account # -6030.

## IV.     Conclusion

For the foregoing reasons, the Dent Children's motion to quash the Government's writs of execution on the accounts in the names of Hailey Dent and Hunter Dent (Dkt. No. 1145) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel  
Richard Mark Gergel  
United States District Judge

October 29, 2021  
Charleston, South Carolina